[Civ. No. 18064.   First Dist., Div. One.   Apr. 17, 1958.]

TOWN OF ATHERTON (a Corporation), Petitioner, v. SUPERIOR COURT OF SAN MATEO COUNTY, Respondent; MENLO PARK SCHOOL DISTRICT, Real Party in Interest.

Winston Churchill Black for Petitioner.

No appearance for Respondent.

Keith C. Sorenson, District Attorney, and Howard E. Gawthrop, Deputy District Attorney, for Real Party in Interest.

Edmund G. Brown, Attorney General, and Richard H. Perry, Deputy Attorney General, as Amici Curiae on behalf of Real Party in Interest.

BRAY, J—Petitioner seeks writ of prohibition to restrain the Superior Court of San Mateo County from proceeding in an action in eminent domain now pending in that court, numbered 76501, brought by Menlo Park School District* against certain parties, in which said respondent seeks to condemn certain lands in said town of Atherton for school purposes.†

QUESTIONS PRESENTED

Do the zoning ordinances of a municipality control the right of a school district in which the municipality is included, to designate the location of its schools? Corollary to this are the questions (a) Is a school district a state agency? (b) If so, has the state occupied the field of location of schools?

FACTS

There is no conflict as to the facts. Included in Menlo Park School District are the incorporated cities of Atherton and Menlo Park as well as unincorporated territory. The district desires to acquire land in Atherton for public school purposes. Petitioner is a municipal corporation of the sixth class. June 24, 1957, the city council adopted ordinance Number 225, entitled "An Interim Zoning Ordinance Relating to Public Buildings and the Location Thereof Declaring its Urgency and Providing that it Shall Take Effect Immediately." In

---

*Hereinafter referred to as respondent.

†Argued and submitted with this proceeding is No. 1 Civil 18025, *Samuel Landi and Rose Landi* v. *Superior Court.* See *post,* p. 839 [324 P.2d 326] this day decided.

substance it prevents any property in the town of Atherton which is zoned for residential purposes from being used for any other purposes, specifically providing that no lands presently zoned residential may be used for the purpose of public buildings, including but not limited to schools. The ordinance was adopted pursuant to section 65806, Government Code, which provides that if the planning commission in good faith is conducting studies or holding hearings for the purpose of the adoption of any zoning ordinance or amendment thereto, the legislative body may adopt a temporary interim zoning ordinance prohibiting any purposes which might conflict with such ordinance.

The same day the city council adopted a resolution proposing amendments to the town's zoning ordinance Number 146 as amended for the zoning of public buildings, including schools, and directing the planning commission to hold public hearings on the proposed amendments to determine whether or not zoning districts should be established in which public buildings, including schools, may be located. The planning commission has employed a planning consultant for expert advice on land uses in the town, is now making pertinent studies, and has held public hearings. If valid, the ordinances would prohibit the school district from locating its school as proposed.

July 3, 1957, respondent commenced its eminent domain action, in which it seeks to condemn approximately nine acres within petitioner's corporate limits for school purposes, which property is zoned for residential uses only under petitioner's comprehensive zoning plan (ordinance Number 146 as amended). The condemnation is in direct violation of ordinance Number 225. The superior court in said action refused to grant petitioner's request for an order staying proceedings in said action. The petition alleges that the planning commission is proceeding "in good faith" as required by section 65806, Government Code; that Atherton was incorporated in 1923 for the express purpose of assuring a continuance of its area as, and its area still is, a low density, estate type, residential community consisting of 3,035 acres. It has no industrial or manufacturing plants or districts and no business district or business enterprises excepting two real estate offices and one gasoline service station existing as nonconforming uses. Atherton is primarily dependent for revenue to operate the municipality on real property taxes. Three different elementary school districts including respondent extend into the

boundaries of Atherton and the portion of each in Atherton is much smaller than the outside portions. Approximately 7,000 persons live in Atherton. Registered as in attendance in schools within the town limits are 6,046 persons of whom 2,696 are in elementary grades. Only 1,640 of these persons reside in Atherton; 1,206 of these are in the elementary grades. Approximately 33 elementary students resident in Atherton cannot attend any public school in the town and are attending one in unincorporated territory. Seventy-four and sixty-one one-hundredths per cent of the land in Atherton is used for one family residences, 15 per cent for streets, 5.86 per cent for schools, 3.61 per cent for public utilities, fire protection and city hall, police and other municipal uses; .92 per cent for other uses. The major portion of respondent district lies in the city of Menlo Park. Menlo Park uses for school purposes only 1.5 per cent of its land as compared to the 5.86 per cent used in Atherton. A study by the American Institute for Planners, published jointly with the Federal Reserve Bank of Boston, for a city of the same size, type and kind as Atherton, shows that reasonable and proper zoning would require for school purposes only 1.31 per cent of the total town area, or 39.76 acres as compared to Atherton's present 5.86 per cent or 177.77 acres. In addition to the nine acres sought to be condemned, petitioner is informed that respondent intends to acquire additional acreage in Atherton. Listing the present public and private schools, petitioner contends that Atherton has more schools per capita and more students in proportion to residents, than any other city in the United States. In the past five years there have been attempts to build four additional schools in Atherton. One elementary district whose boundary does not include any of the territory of Atherton, attempted to acquire property in Atherton for a school which no Atherton resident would have been permitted to attend. Attending school in Atherton with its population of only 7,000 are approximately 6,000 students while no community on either side of Atherton has students therein exceeding one for every five residents. Because of needed traffic control, public safety and police protection every school in Atherton has to receive the special attention of a police officer and because of the unreasonable number of schools there is an unreasonable burden on the police department and an unreasonable expenditure for the benefit of a majority of students who contribute nothing thereto.

In its answer in the eminent domain action, petitioner has set forth that plaintiff has not acquired the conditional use

permit required by ordinance Number 146. The superior court denied petitioner's motion for a judgment on the pleadings based upon the ground that respondent's complaint was barred by the provisions of said two ordinances.

### DOES PETITIONER'S ZONING ORDINANCE CONTROL?

Petitioner contends that the issue in this case is whether a municipality under section 65806, Government Code, has the power by an interim ordinance to prohibit any other than specific uses pending studies by the planning commission. It attempted to do this in ordinance Number 225. We are only concerned with the power of the municipality by such an ordinance to prohibit a school district from acquiring public school sites, and not to the application of the ordinance in general.

Petitioner concedes that the power of eminent domain is inherent in the State of California and may be exercised by the state, or any of its agencies to which the power is delegated, but contends that the delegation of the power to schools is limited by the powers which it contends the municipalities have by virtue of section 11, article XI, Constitution, and section 65800, Government Code.

In order to determine these questions we must consider the question of whether a municipality has the power to zone school sites, whether by an interim ordinance or otherwise. Therefore, we must determine if a school district is a state agency, and if so, whether the state has occupied the field in the matter of location of school sites.

(a)  *Is a School District a State Agency?*

This question has been flatly answered in the affirmative in *Hall* v. *City of Taft*, 47 Cal.2d 177 [302 P.2d 574]: "The public schools of this state are a matter of statewide rather than local or municipal concern; their establishment, regulation and operation are covered by the Constitution and the state Legislature is given comprehensive powers in relation thereto. . . . School districts are agencies of the state for the local operation of the state school system. [Citations.] The beneficial ownership of property of the public schools is in the state." (Pp. 179, 181.)

(b)  *State has Occupied the Field.*

"The public school system is of statewise supervision and concern and legislative enactments thereon control over attempted regulation by local government units. [Citations.]" (*Hall* v. *City of Taft, supra,* at p. 181.)

■ Has the state occupied the field of school site location or has it expressly granted the power of school zoning to the municipalities? The answer is that the state has occupied the field. Evidence of this is the following statutes:

Section 18402, Education Code: "The State Department of Education shall establish standards for school sites." How can this be accomplished if a municipality may by zoning determine the location of such sites?

Section 18403, Education Code, provides that the governing board of a school district before acquiring property for a new school site or addition to a present school site shall "give the planning commission having jurisdiction notice in writing of the proposed acquisition." The planning commission in 30 days is required to submit to the school board "a written report of the investigation and its recommendations concerning acquisition of the site." "The governing board shall not acquire title to the property until the report of the planning commission has been received. *If the report does not favor the acquisition of the property for a school site, or for an addition to a present school site, the governing board of the school district shall not acquire title to the property until 30 days after the commission's report is received.*" (Emphasis added.) This shows that while the local planning commission may recommend concerning the location of a school site the ultimate determination of the site is in the school board.

Section 18404 provides that a school district board and a city school board, if the latter desires to locate a school within two miles of an airport, must notify the State Department of Education of the proposed acquisition of a school site, and if the state department does not report favorably, the school board must wait 30 days before acquiring title to the property. This power of recommendation in the state department is inconsistent with the right of a local planning commission to designate by zoning the area where a public school may be located.

Section 65090 et seq., Government Code, deal with the appointment and powers of a city planning commission. In chapter 3, article 9, dealing with "Administration of Master or General Plan" appears section 65551, which provides that after the legislative body has adopted a master or general plan for the city no "public ground or open space" shall be acquired and "no public building or structure shall be constructed or authorized in the area" until its location, purpose and extent have been submitted to and reported upon by

the planning commission. Section 65552 provides that if the power to acquire such "public ground or open space" or public building or structure is vested in "some governmental body, commission, or board" other than the city council, then such body, commission or board shall submit to the planning commission its location, purpose and extent.

Section 65553 provides that the planning commission shall report its findings as to whether the proposed public improvement conforms to the adopted master or general plan.

Section 65554 provides: "If the planning commission disapproves the proposed public improvement, *its disapproval may be overruled by such other governmental body, board, or agency.*" (Emphasis added.) Such a power in the other government body is completely incompatible with a power in the municipality of zoning public schools.

Petitioner points out that a planning commission has no legislative function, but may only study, administer and recommend, whereas the city council has the sole power to zone. Therefore, says petitioner, section 65554 deals only with the planning commission and is not binding on the city council. This contention overlooks the fact that the section is dealing with a master plan which has already been adopted by the city council and in which the council has zoned an area for a public ground or building. While the council may zone it, these sections provide that if the power to acquire such ground or building is in some other governmental body that body after reporting to the planning commission may entirely disregard the disapproval of the commission. There is no requirement that it then must go to the city council before it may acquire the property. "[P]ublic ground or open space," and "public building or structure," necessarily include public school grounds and buildings. Assuming that the city council under the statutes relied upon by petitioner, and hereafter discussed, in the first instance has the power to zone schools, it is clear that such zoning is merely advisory or recommendatory and that under section 65554 such zoning is not binding on the school district.

██ Petitioner contends that Atherton's power to zone comes from section 11, article XI, Constitution (the police power section): "Any county, city, town, or township may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws." "A zoning ordinance falls within the classification

of police measures.'' (*Hurst* v. *City of Burlingame*, 207 Cal. 134, 138 [227 P. 308].) Petitioner concedes that under the qualification in the section, the Legislature has the power to grant to the school districts if they are state agencies the exclusive power of zoning school sites. Petitioner contends that the Legislature has not done so but on the other hand has done just the contrary and designated the municipalities as the body having the power to effect such zoning. Supporting its contention it cites the hereafter mentioned statutes which it contends control those above mentioned. Section 65800, Government Code: ''Pursuant to the provisions of this chapter, the legislative body of any county or city by ordinance may: (a) Regulate the use of buildings, structures, and land as between agriculture, industry, business, residence *and other purposes*. . . . (d) Create civic districts around civic centers, public parks, and public buildings and grounds for the purpose of enabling a planning commission to review all plans for buildings or structures within the district prior to the issuance of a building permit in order to assure an orderly development in the vicinity of such public sites and buildings.'' (Emphasis added.) Section 65801: ''For such purposes the legislative body may divide a city, a county, or portions thereof into zones of the number, shape, and area it deems best suited to carry out the purpose of this chapter.'' Section 65806 gives the city council authority to adopt as an emergency measure a temporary interim zoning ordinance to protect the public safety, health and welfare, which ordinance may prohibit *''such and any other uses* which may be in conflict with such zoning ordinance.'' (Emphasis added.) Section 65462 provides of what the master or general plan shall consist, including '' (a) A *land use* element which designates the proposed general distribution and general location and *extent of the uses* of the land for housing, business, industry, recreation, *education*, public buildings and grounds, and other categories of public and private uses of land.'' (Emphasis added.) Section 65470: ''A master or general plan may include a public buildings element of the plan, showing *locations* and arrangements of civic and community centers, *public schools*, libraries, police and fire stations, and all other public buildings, including their architecture and the landscape treatment of their grounds.'' (Emphasis added.)

We see nothing in any of the above statutes which in any way conflicts with the statutes hereinbefore mentioned which we hold evidence the occupancy of the field by the state. The

sections referred to by petitioner necessarily include broad general language in order to cover all the situations, purposes and property with which zoning must be concerned. The word "education" in section 65462 does not conflict with the power of a school district to locate its schools. It must be construed with statutes dealing with zoning and the rights of the state. It must be remembered that in all municipalities there are private schools, the location of which is purely a municipal matter. Hence the reason for the words "education" and the words "other uses" and "other purposes" appearing in the above statutes. As to the words "public schools" in section 65470, no master plan would be complete without showing on it the location of public schools already in existence. It may also show areas which the city recommends for future schools. The quoted words in nowise show that the Legislature intended by the use of these words to repeal the evident power given school districts expressly as state agencies to locate their schools. The statutes relied upon by petitioner include "public buildings." Petitioner concedes that the inclusion of those words in the statutes does not in any manner interfere with the right of the state to locate a state building, or of a county to locate a county building, in any portion of a municipality it desires, regardless of any attempt of the municipality to zone the location of such buildings. Yet if its contention is correct that by the inclusion of the words "education" and "public schools" in the above statutes the Legislature was relinquishing the field of school site location to the municipalities, it necessarily would be equally true that by the inclusion of "public buildings" the Legislature was also relinquishing the field of state and county building site locations.

*Zahn* v. *Board of Public Works,* 195 Cal. 497 [234 P. 388], deals with the power of the city of Los Angeles to zone to exclude stores from certain areas. Petitioner contends that the language (pp. 502-503) to the effect that a municipal zoning ordinance which regulates, restricts and segregates the location of "industries, the several classes of business . . . and the several classes of public and semi-public buildings" is a valid exercise of the police power, is a holding that Atherton has the power it claims here. Obviously, the court did not have in mind nor was it passing upon the question involved in our case. It was dealing solely with the power to zone business areas.

In *Hall* v. *City of Taft, supra,* 47 Cal.2d 177, the question was "whether a municipal corporation's building regulations

are applicable to the construction of a public school building by a school district in the municipality.'' (P. 179.) Taft, like Atherton, is a city of the sixth class. Taft, as does petitioner here, relied on article XI, section 11 of the Constitution and contended that under the police power therein granted, it was given the power to adopt building regulations which would apply to school buildings within its boundaries, as the state had not occupied the field. After holding, as we have hereinbefore shown, that a school district is a state agency, the court went on to hold that the state had completely occupied the field and that the city's regulations concerning ''the activity involved'' (p. 184) conflicted with general laws. ''A city may not enact ordinances which conflict with general laws on statewide matters [citations].''

The Education Code sets out a complete system for providing necessary and adequate schools. In addition to the statutes hereinbefore discussed there are the following: Section 5021: ''The Legislature hereby declares that it is in the interest of the State and of the people thereof for the State to aid school districts of the State in providing necessary and adequate school buildings for the pupils of the Public School System, such system being a matter of general concern inasmuch as the education of the children of the State is an obligation and function of the State.'' This language obviously includes the location of schools. Section 5041: ''The Legislature hereby declares that it is in the interest of the State and of the people thereof for the State to aid school districts of the State in providing necessary and adequate school sites and buildings for the pupils of the Public School System, such system being a matter of general concern inasmuch as the education of the children of the State is an obligation and function of the State. . . .'' Section 5022 appropriates a sum of $30,000,000 to be apportioned to school districts for ''(1) The purchase and improvement of school building sites.'' Section 18102, subdivision (a), requires the board of education to ''Advise with the governing board of each school district on the acquisition of new school sites, and after a review of available plots give the governing board of the district in writing a list of the approved locations in the order of their merit considering especially the matters of educational merit, reduction of traffic hazards, and conformity to the organized regional plans as presented in the master plan of the planning commission having jurisdiction.'' While the department of education is thereby required to consider the master plan of a city,

in approving a school site, the school district is not required to conform to the department's recommendations. Section 18404 hereinbefore discussed gives the local school board the power to disregard the department's recommendations as it only requires the board to delay for 30 days the acquiring of title to the property the board desires, if the department's recommendation is unfavorable. These sections, as was said in *Hall* v. *City of Taft, supra,* 47 Cal.2d 177, 188, concerning the building construction sections, "tend more to indicate that the school districts could follow such regulations [of the municipalities] as well as those of the state but are not bound to do so."

"The governing board of any school district may, and when directed by a vote of the district shall, build and maintain a schoolhouse." (Ed. Code, § 18151.) Section 18153 gives the school board the power to establish additional schools in the district. Section 18152 gives the school board, where any school is overcrowded, the power to locate the school in temporary quarters, without restriction as to its location.

The comprehensive system of school control and operation by the school districts as shown in the statutes herein discussed is completely inconsistent with any power of a municipality to control the location of school sites.

*Hall* v. *City of Taft, supra,* 47 Cal.2d 177, placed its decision that the construction of school buildings by school districts is not subject to building regulations of a municipality upon another ground than that the state has completely occupied the field by general laws and that such regulations interfere with those laws.* " '. . . When it engages in such sovereign activities as the construction and maintenance of its buildings, as differentiated from enacting laws for the conduct of the public at large, it is not subject to local regulations unless the Constitution says it is or the Legislature has consented to such regulation. Section 11 of article XI of the state Constitution, *supra,* should not be considered as conferring such powers on local government agencies. Nor should the Government Code sections which confer on a city the power to regulate the construction of buildings within its limits (see Gov. Code, §§ 38601, 38660) be so considered. . . .' " (P. 183.) As stated in the Hall case (p. 181) : "The beneficial ownership of property of the public schools is in the state."

---

*The brief of the attorney general on behalf of Honorable Roy E. Simpson, Superintendent of Public Instruction and ex-officio Director of Education, as amicus curiae, stresses this ground.

■ If, as the Hall case holds, the construction and maintenance of a school building is a sovereign activity of the state, it is obvious that the location and acquisition of a school site is necessarily and equally such an activity. Obviously, too, neither the Constitution nor the Legislature has consented to a municipal regulation of school sites. As said in *Kentucky Institution for Education of Blind* v. *City of Louisville*, 123 Ky. 767 [97 S.W. 402, 8 L.R.A.N.S. 553], as quoted in the Hall case (p. 183) : " ' ' "The principle is that the state when creating municipal governments does not cede to them any control of the state's property situated within them, nor over any property which the state has authorized another body or power to control. . . . How can the city ever have a superior authority to the state over the latter's own property, or in its control and management? From the nature of things it cannot have." ' ' "

As said in *C. J. Kubach Co.* v. *McGuire*, 199 Cal. 215, 217 [248 P. 676] : "In the interpretation of a legislative enactment it is the general rule that the state and its agencies are not bound by general words limiting the rights and interests of its citizens unless such public authorities be included within the limitation expressly or by necessary implication."

Under the statutes, the state has in nowise ceded to the municipalities its sovereign right to locate school sites. On the contrary, the state has expressly granted the power of location to its agencies, the school districts.

Article IX, section 5, and article IV, section 25, subdivision 27, of the Constitution vest the Legislature with the absolute power to establish the state school system. "It is well settled that the school system of the state is a matter of general concern and not a municipal affair. . . ." (*Becker* v. *Council of the City of Albany*, 47 Cal.App.2d 702, 705 [118 P.2d 924].)

The fact that ordinance Number 225 is an interim ordinance intended to hold property in status quo under the period of study necessary to an ultimate determination of the city's master plan, does not give the city the power to prevent the district from exercising its right of eminent domain in acquiring a school site. As we have shown, the city has no right to zone against the district's right of location whether such zoning be intended to be temporary or permanent.

Petitioner contends that the action of the school board in bringing the eminent domain action and particularly in choosing the school site thereby sought to be acquired is arbitrary

and constitutes an abuse of the discretion vested in the board. This question cannot be determined in prohibition. It is possibly a matter of defense to be determined in the condemnation action.

The alternative writ is discharged and the petition for a peremptory writ is denied.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied May 16, 1958.