[Civ. No. 5917. Fourth Dist. May 25, 1959.]

TUSTIN HEIGHTS ASSOCIATION (an Unincorporated Association) et al., Appellants v. THE BOARD OF SUPERVISORS OF ORANGE COUNTY et al., Respondents.

622

Rutan, Lindsay, Dahl, Smedegaard, Howell & Tucker, Milford W. Dahl and H. Roger Howell for Appellants.

Joel E. Ogle, County Counsel, Adrian Kuyper, Assistant County Counsel, and Blodget, Gilbert & Cochran and Arthur M. Bradley for Respondents.

FACTS

STONE, J. pro tem.*—The respondent board of supervisors enacted a land use plan for Orange County entitled "The Districting Ordinance." The respondent, The Roman Catholic Archbishop of Los Angeles, petitioned the Orange County Planning Commission for a conditional use permit for the establishment of a church and an elementary parochial

---

*Assigned by Chairman of Judicial Council.

school in the 100-E4 Small Estates District. After hearings, the planning commission recommended denial of the application on the grounds that (1) "The site is not large enough to take care of students under customary state standards and also provide adequate parking space"; (2) that "Material detriment or injury to the neighborhood will result from issuance of this permit."

After disapproval by the planning commission, the matter was submitted to the board of supervisors. On May 22, 1957, the board of supervisors held a hearing at which evidence was submitted and the hearing was closed with a motion to reach a decision on the application on Wednesday, May 29, 1957. On May 29, 1957, the board of supervisors met without reopening the hearing, although the applicant proposed to amend the application by changing the location and number of the access roads, the size, type, number and location of the buildings, the size and location of the parking area, the size and location of the playground area, and by the addition of a second parcel of real property. No formal amended application was filed either with the planning commission or the board of supervisors. The matter was continued to June 5, 1957, on which date the board of supervisors, without reopening the hearing, allowed the respondent applicant to file an amended plot plan and verbally amend the original application to conform to the amended plot plan. Neither the amended plot plan nor the amended application was referred to the planning commission. The board of supervisors authorized the issuance of the conditional permit on the basis of the proposed amended application and the amended plot plan.

The petitioners, T. Cecil Ostrander and F. N. Clark, are residents and property owners residing in the county of Orange and in the immediate vicinity of the property to which the conditional permit in controversy applies. Both of said petitioners, T. Cecil Ostrander and F. N. Clark are members of the board of directors of petitioner, Tustin Heights Association, which is an unincorporated association. Its members are residents and property owners in the area in which the property in question is located, which is within the 100-E4 Small Estates District. Petitioners filed their petition as a representative suit on behalf of the members of the association and individually as property owners within the zoned area. They sought a writ of mandate requiring the

board of supervisors, collectively and individually, to vacate and set aside the order of the board of supervisors granting the conditional permit. The petition further requested that a writ of mandate issue against C. W. Donohue, Orange County Building Superintendent of Building and Safety, to refrain from in any manner issuing a construction permit for the construction of the church and school requested by the conditional use application, and if a permit had been issued that it be revoked and rendered null and void.

This is an appeal by the petitioners Cecil Ostrander and F. N. Clark, individually and on behalf of the members of Tustin Heights Association, from the judgment after the demurrer of the respondents to the second amended petition had been sustained without leave to amend.

This action is concerned with four sections of the zoning ordinance pertaining to the area in which the respondent, The Roman Catholic Archbishop of Los Angeles, proposed to establish a church and an elementary parochial school. Section 9.2 E4 entitled "SMALL ESTATES" DISTRICT REGULATIONS, provides, insofar as pertinent, as follows:

"A. USES PERMITTED: . . .

"7. The following additional uses, subject to the issuance of Conditional Permits therefor, as prescribed in Section 19: . . .

"b. Churches, museums and libraries.

"c. Schools and Colleges."

Thus conditional permits for the use of churches and schools may be issued pursuant to the ordinance, but only under the conditions provided by section 19. The applicable subsections of section 19 provide:

"SECTION 19. CONDITIONAL PERMITS AND VARIANCE PERMITS.

"A. CONDITIONAL PERMITS:

"The Board of Supervisors, after receipt of the report and the recommendation of the Planning Commission as hereinafter in this section provided, shall have the power to authorize the issuance of conditional permits by the Building Inspector for specified types of uses and buildings in the foregoing Districts, as provided in the use regulations of such districts, under conditions which will preserve the integrity and character of the district, the utility and value of adjacent property and the general welfare of the neighborhood. Minimum conditions therefor are specifically as follows, . . .

"7. Churches, museums and libraries, upon condition that

the location and building and plot plans be approved by the Planning Commission.

"8. Schools, colleges, public playgrounds and athletic fields upon the following conditions:

"a. An area adequate in the judgment of the Planning Commission, be provided to reduce possibility of injury to adjoining residential properties.

"b. Building and plot plans be approved by the Planning Commission.

"c. The location of the school site be approved by the Planning Commission."

One of the minimum conditions of 19-A, subdivisions 7 and 8, is the approval of the planning commission as to those particular uses. Respondents contend that section 19-A is not controlling and that section 19-B, relating to variances, also applies to the conditional uses covered by section 19-A. The trial court agreed with this contention and held that subdivision 19-A should not be interpreted independently but must be construed with section 19-B in determining whether the board of supervisors has the authority to grant a conditional permit without the approval of the planning commission and contrary to subdivisions 7 and 8 of section 19-A.

Section 19-B, which the trial court held to be controlling, reads as follows:

"B. VARIANCE PERMITS:

"The Board of Supervisors, after receipt of the report and recommendation of the Planning Commission as hereinafter in this section provided, shall have the power to grant variances to the height, yard, area and use regulations of this ordinance and authorize the issuance of Variance Permits therefor by the Building Inspector, in cases where practical difficulty, unnecessary hardships or results inconsistent with the general purpose and intent of this ordinance occur through strict application of such regulations and under such conditions as said Board may deem necessary to assure that the General purpose and intent of this ordinance will be observed, public safety and welfare secured, and substantial justice done."

Subsection B of section 19 clearly vests in the board of supervisors the authority to grant a *variance* when the conditions enumerated by that section are shown to exist. There is nothing in section 19-B requiring a favorable recommenda-

tion by the planning commission as a prerequisite to the granting a variance.

## CONDITIONAL USES AND VARIANCES

Respondents contend that section 19-A, Conditional Use Permits, and section 19-B, Variance Permits, must be read together. Inasmuch as section 19-B, relating to variances, authorizes the board of supervisors to grant a variance permit even though the planning commission makes an adverse recommendation, respondents argue that such power coheres to conditional use permits covered by section 19-A. Aside from disregarding the plain wording of the ordinance which treats conditional uses and variances separately, this argument ignores the basic distinctions between conditional use permits and variance permits. ■ Classically, a master zoning ordinance establishes the basic uses permitted within the particular zoned area. Usually such permitted uses are not exclusive and the zoning act also enumerates certain other uses known as exceptions which do not comply with the ordinance but which may nonetheless be permitted upon application and hearing. Although various jurisdictions use different terminology when referring to such exceptions, they fall within three categories and the attributes of each type are essentially the same in all jurisdictions. ■ The first is the "nonconforming use." It is a use of property that was in effect prior to the enactment of the zoning ordinance. Although prohibited, it may be permitted if shown that it is not a menace to the health, welfare and safety of the public. (*Livingston Rock etc. Co.* v. *County of Los Angeles,* 43 Cal.2d 121, 127 [272 P.2d 4] ; *Hopkins* v. *MacCulloch,* 35 Cal.App.2d 442, 445 [95 P.2d 950] ; 2 Metzenbaum, Law of Zoning, 2d ed., chap. IX-m, p. 957 ; 1 Yokley, Zoning Law and Practice, 2d ed., § 147, p. 362 ; 8 McQuillan, Municipal Corporations, 3d rev. ed., chap. 25.160.) ■ The second type of exception is the "conditional use," which is sometimes referred to by the general term "exception." A conditional use may be permitted if it is shown that its use is essential or desirable to the public convenience or welfare and at the same time that it will not impair the integrity and character of the zoned district. It must also be shown that it is not detrimental to public health, public morals, or public welfare. ■ Hardship is not a prerequisite to the issuance of a conditional use permit and there is no burden on the applicant to show hardship in any nature. (*Essick* v. *City of Los An-*

*geles,* 34 Cal.2d 614, 623 [213 P.2d 492] ; *Wheeler* v. *Gregg,* 90 Cal.App.2d 348, 363 [203 P.2d 37] ; 1 Yokley, Zoning Law and Practice, 2d ed., § 133, p. 323; Metzenbaum, Law of Zoning, *supra;* McQuillan, Municipal Corporations, *supra.*)

█ The third type of use exception permitted under applicable circumstances is known as the "variance." The essential requirement of the variance is a showing that strict enforcement of the zoning limitations would cause unnecessary hardship. The burden of showing hardship is on the applicant. █ Thus a conditional use and variance are not one and the same and the provisions for each of them are not to be construed together as reciprocal parts of an integrated ordinance unless the particular act in question specifically and unequivocally so provides. (*Essick* v. *City of Los Angeles, supra; Wheeler* v. *Gregg, supra;* 2 Metzenbaum, Law of Zoning, *supra,* p. 362; 8 McQuillan, Municipal Corporations, 3d rev. ed., chap. 25.160.)

█ It is apparent that the framers of the ordinance in question understood that the two types of exception are dissimilar and intended to draw the ordinance in a manner to express the classical distinction between conditional uses and variances. Not only are the two types of uses treated separately in the ordinance, 19-A being entitled Conditional Permits, and 19-B entitled Variance Permits, but each contains a separate statement of conditions.

Section 19-A provides:

"A. CONDITIONAL PERMITS:

"The Board of Supervisors, after receipt of the report and the recommendation of the Planning Commission as hereinafter in this section provided, shall have the power to authorize the issuance of conditional permits by the Building Inspector for specified types of uses and building in the foregoing Districts, as provided in the use regulations of such districts, under conditions which will preserve the integrity and character of the district, the utility and value of adjacent property and the general welfare of the neighborhood."

It should be noted that no mention is made of hardship as a condition.

Section 19-B provides:

"B. VARIANCE PERMITS:

"The Board of Supervisors, after receipt of the report and recommendation of the Planning Commission as hereinafter in this section provided, shall have the power to grant vari-

ances to the height, yard, area and use regulations of this ordinance and authorize the issuance of Variance Permits therefor by the Building Inspector, in cases where *practical difficulty, unnecessary hardships or results inconsistent with the general purpose and intent of this ordinance occur through strict application* of such regulation *and under such conditions as said Board may deem necessary* to assure that the general purpose and intent of this ordinance will be observed, public safety and welfare secured, and substantial justice done.'' (Italics added.)

Clearly, the essence of the variance under 19-B is hardship and the board is to impose the regulations and conditions under which the variance is granted. Despite the clear wording of the two sections, respondents contend that the framers of the ordinance intended 19-A, conditional use permits, and 19-B, variance permits, to be read together because, as a prelude to setting forth some twenty-three paragraphs of minimum conditions for different types of conditional use permits, section 19-A provides ''Minimum conditions therefor are specifically as follows, except as otherwise provided in Subdivision B (Variance Permits) of this section.'' We do not construe this sentence to mean that the two sections are interchangeable. We conclude that the sentence refers to the common heading of the entire section 19, which is entitled ''SECTION 19. CONDITIONAL PERMITS AND VARIANCE PERMITS.'' It is an attempt to make it clear that minimum requirements for subdivision 19-A, conditional permits, are not intended to control the issuance of variance permits which follow in subsection 19-B. If respondents' position were correct and the two subdivisions were to be construed together, the result would be that all of the requirements of section 19-B must also apply to 19-A. Under such a construction each applicant for a conditional use permit would be required to show unnecessary hardship, which is required for a variance permit. It must follow that if the veto power of the board in 19-B applies to 19-A, then all other provisions of section 19-B apply equally to 19-A. The record does not reflect that respondent Roman Catholic Archbishop of Los Angeles has met the requirements of section 19-B for a variance and no such contention has been urged on this appeal. We conclude that the board of supervisors violated the provisions of section 19-A of the zoning ordinance by granting a conditional use permit contrary to the recommendation of the planning commission.

There is no provision for such overriding action by the board in section 19-A of the ordinance.

PROCEDURE UPON AMENDING APPLICATION FOR USE PERMIT

■ Even though section 19-A, concerning conditional permits, and 19-B, concerning variances, were to be construed together, the demurrer in this case should not have been sustained without leave to amend. The planning commission recommended to the board of supervisors that it deny the permit. Thereafter, on May 22, 1957, the board of supervisors held a public meeting and the matter was taken under submission. On May 29, 1957, respondent church amended the application by changing the locations of roads, adding additional property to the site, changing the number and locations of the buildings and the size and location of the parking area and of the playground area. The matter was continued to June 5, 1957, at which time the board made its minute order approving the granting of the permit in accordance with the amended application. The amended application was not referred to the planning commission after the amendments were made. Section 19-C of the ordinance specifies the procedure to be followed when an application for *either* a conditional permit or a variance is amended and reads as follows:

"C. PROCEDURE — CONDITIONAL PERMITS AND VARIANCE PERMITS:

"Application for a Conditional Permit or a Variance Permit shall be made to the Planning Commission. The Planning Commission shall prescribe the form, content and manner of preparing and submitting any application provided for in this section. . . .

"9. The Board of Supervisors after receipt of the report and recommendation of the Planning Commission may grant amendment of any Conditional Permit or Variance Permit and authorize the issuance of an Amended Conditional Permit or Amended Variance Permit by the County Building Inspector under the following provisions: . . .

"e. That the application for such amendment shall be subject to the same requirements as to filing of plot plans and related information as was required in filing application for the original permit."

Thus, when an application is amended, whether it be for a conditional permit or a variance, the application as amended must be referred to the planning commission in accordance

with 19-C 9-e. An allegation raising the question of procedure as an issue is properly pleaded in the petition. The question of whether or not the board complied with the procedure specified in the ordinance is an issue regardless of whether or not the board of supervisors has the authority to grant either a conditional permit or a variance contrary to the recommendation of the planning commission. The board of supervisors is bound by the provisions of its own ordinance. (*Johnston* v. *Board of Supervisors*, 31 Cal.2d 66, 76 [187 P.2d 686].)

## Is the Zoning of Churches and Private Schools Unconstitutional?

■ Respondent Roman Catholic Archbishop of Los Angeles contends that the zoning ordinance in its entirety is unconstitutional insofar as it attempts to restrict the use of property for churches or schools within the zoned area. Such zoning, it is argued, is a violation of the First and Fourteenth Amendments to the United States Constitution in that it would deprive respondent of property without due process of law, infringe on the free exercise of religion, and deny equal protection of the law. Although some foreign jurisdictions have so held in cases factually similar, the question is well settled to the contrary in California. The same arguments as respondent church here makes were urged in the case of *Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints* v. *City of Porterville*, 90 Cal. App.2d 656 [203 P.2d 823]. That case construed a zoning ordinance which prohibited the building of a church in an area zoned for single family dwellings. The court held, at page 660:

"The petitioner is not a congregation, but holds its property as a corporation sole, the existence of which depends upon the laws of the state. Having such right from the state, the enjoyment of the property is subject to reasonable regulations. The denial of a building permit did not prohibit anyone from religious worship and there is nothing in the record before us to indicate that the church building could not be erected if located in the area zoned for that purpose."

A hearing was denied by the California Supreme Court in the Porterville case and the United States Supreme Court dismissed an appeal from the judgment and denied a rehearing. A very recent case, *Minney* v. *City of Azusa*, 164 Cal. App.2d 12 [330 P.2d 255], was concerned with the very con-

tentions being made by respondents in this case and the court held the zoning ordinance was not unconstitutional. The California Supreme Court denied a hearing in the *Minney* v. *City of Azusa* case, and an appeal to the United States Supreme Court was dismissed. No useful purpose would be served by quoting here the reasoning of the court in the *Minney* v. *Azusa* opinion or the many authorities cited therein; rather, reference is made to the opinion.

### DOES THE ZONING OF SCHOOLS DISCRIMINATE AGAINST PRIVATE SCHOOLS?

 Respondent church next argues that the zoning ordinance is unconstitutional because it discriminates against private schools, and cites *Roman Catholic Welfare Corporation of San Francisco* v. *City of Piedmont*, 45 Cal.2d 325 [289 P.2d 438], which is the leading California case on the subject. However, in that case the ordinance prohibited only private schools and the Supreme Court held such a restriction to be discriminatory. The ordinance before us purports to restrict all schools and, on its face, is not subject to the same criticism. However, as respondent points out, in practical application, the zoning ordinance cannot be enforced against public schools because the courts of this state have held that the State of California has occupied the field of public education. Public schools can not be regulated by city or county ordinances in a field occupied by the state. In *Hall* v. *City of Taft*, 47 Cal.2d 177 [302 P.2d 574], the court held, at page 181 et seq. that:

"The public school system is of statewide supervision and concern and legislative enactments thereon control over attempted regulation by local government units. (Citations.) . . . When it engages in such sovereign activities as the construction and maintenance of its buildings, as differentiated from enacting laws for the conduct of the public at large, it is not subject to local regulations unless the Constitution says it is or the Legislature has consented to such regulation."

In the Hall case, *supra,* the particular public school activity involved was the construction and maintenance of public school buildings. In a later case, *Town of Atherton* v. *Superior Court*, 159 Cal.App.2d 417 [324 P.2d 328], the court had before it a zoning ordinance which excluded all schools from the zoned area. To that extent the Atherton ordinance is comparable to the Orange County ordinance which we are

considering. In the Atherton case the court adopted the principle of the Hall decision and held that the state has occupied the field of school site location. The court said, at page 428:

"If, as the Hall case holds, the construction and maintenance of a school building is a sovereign activity of the state, it is obvious that the location and acquisition of a school site is necessarily and equally such an activity. Obviously, too, neither the Constitution nor the Legislature has consented to a municipal regulation of school sites. . . .

"Under the statutes, the state has in nowise ceded to the municipalities its sovereign right to locate school sites. On the contrary, the state has expressly granted the power of location to its agencies, the school districts.''

 Hence, it is clear that the Orange County ordinance can not restrict the location of public schools within the zoned areas. Respondent church argues that since the ordinance is ineffective as to public schools it is an unconstitutional denial of equal protection of the law if applied to private schools. The argument is untenable in that it assumes that due process and equal protection of the law are synonymous with equal treatment of private citizens and the sovereign. Respondent's argument is that since the state may not be regulated in this particular field of activity, neither can the same activity of a private individual or corporation be so regulated. If this theory of equal protection were valid, it would necessarily apply to all activities of the state, not just public schools. Certainly, in the Hall case, *supra,* the Supreme Court said, at page 182:

". . . We are referred to no statute or Constitutional provision which, as far as the question here involved is concerned, expressly makes school buildings or their construction any more amenable to regulation by a municipal corporation than *structures which are built and maintained by the state generally for its use.*'' (Italics ours.)

The list of state activities which are not subject to local zoning is long and varied and the law does not prohibit the regulation of the counterpart of each of these activities in private ownership. Equal protection of the law does not require an equating of private rights with those of the sovereign.

There is language in *Town of Atherton* v. *Superior Court, supra,* which holds that the zoning of private schools is purely a municipal matter. At page 425, the court said:

"The word 'education' in section 65462 does not conflict with the power of a school district to locate its schools. It must be construed with statutes dealing with zoning and the rights of the state. *It must be remembered that in all municipalities there are private schools, the location of which is purely a municipal matter.*" (Italics added.)

### Must the Standards for Nonconforming Uses, Conditional Uses, and Variances be Definitive?

 Respondents' third and final contention concerning the constitutionality of the ordinance is restricted to subsection 19-A. It is alleged that this section fails to specify definite standards for the granting of a conditional use permit. Respondents argue this leaves the way open for arbitrary and discriminatory action by the planning commission. Before considering the merits of this contention we note that this attack is not directed against the basic zoning ordinance which establishes the character of the area and the uses to which the property therein may be put. It is directed against only the conditional uses which are exceptions to the restrictions of the master ordinance. Therefore, if section 19-A were held to be unconstitutional because of a lack of fixed and detailed standards to guide the planning commission, it would leave respondent church's property subject to the basic zoning restrictions without any provision for a conditional use. However, we do not think subsection 19-A unconstitutional. It is true that there are cases holding that an ordinance providing for a conditional use permit is unconstitutional if it does not provide detailed standards to govern the planning commission or the board, which must pass upon the application. On the other hand, there are authorities which take a broader view and hold that by reason of the nature of zoning, exceptions must be defined in general terms and administered at the discretion of the planning commission or board. The basic ordinance which governs the character of the area and circumscribes the uses of the property therein certainly must contain detailed standards and limitations, but we are here concerned with exceptions which are special dispensations for a use barred by the basic zoning ordinance. This distinction is stated in *Rubin* v. *Board of Directors,* 16 Cal.2d 119, 124 [104 P.2d 1041], as follows:

"Unlike the 'spot zoning' obtained by amendment of the general zoning ordinance, a variance or exception sanctions a deviation from the standard under the dispensing power

vested in the administrative body. (*People* ex rel. *Fordham M. R. Church* v. *Walsh*, 244 N.Y. 280 [155 N.E. 575].) This authority is entirely different from a licensing power under which permission may be granted to do an act or conduct a business when the applicant has complied with the requirements of the law under which the license is sought. Ordinarily, under such circumstances, the administrative body must issue a license. On the other hand, the grant of dispensation is a matter of grace, and a refusal is not the denial of a conditional statutory right; it merely leaves in operation the statute adopted by the legislative body. (*People* ex rel. *Fordham M. R. Church* v. *Walsh, supra.*)'' See also *Lindell Co.* v. *Board of Permit Appeals,* 23 Cal.2d 303, 322 [144 P.2d 4]; *Wheeler* v. *Gregg,* 90 Cal.App.2d *supra,* 348.

 There are standards provided by sections 19-A and 19-B but, admittedly, they are broad and permit the exercise of discretion by the planning commission. The primary requirement is that conditional uses and variance must be such that they will preserve the integrity and character of the district, the utility and value of adjacent property and the general welfare of the neighborhood. The ordinance then vests in the discretion and judgment of the planning commission the determination of when the applicant has presented a request for a use which is an exception but which will nonetheless preserve the integrity and character of the district, the utility and value of adjacent property, and the general welfare of the neighborhood. To devise standards to cover all possible situations that could be exceptions, that is, which would warrant the granting of a conditional use permit or a variance permit, would be a formidable task and one that would tax the imagination. If a legislative draftsman blessed with such omniscience were available and he could draft standards to govern the likely as well as the possible contingencies which a conditional use permit or variance is designed to relieve, there would be no need for a conditional use or a variance. Such detailed standards, when incorporated in the ordinance, would remove them from the conditional use and variance category, making them a part of the zoning ordinance proper. There would be no discretion whatever and anyone meeting the detailed and definite standards would be entitled to a permit without question as his proposed use would be authorized by the ordinance just as much as the uses permitted under the basic zoning ordinance. All of which goes to point up our belief that if the purposes of zoning

are to be accomplished, the master zoning restrictions or standards must be definite while the provisions pertaining to a conditional use or a variance, designed to relieve against uncertain eventualities, must of necessity be broad and permit an exercise of discretion. The courts of this state have repeatedly upheld zoning ordinances containing provisions governing conditional use permits and variance permits similar to the ordinance before us. In *Wheeler* v. *Gregg, supra*, p. 360, the ordinance is summarized by the court as follows:

"Sections 12.24 and 12.32-E of the ordinance authorized the council to grant a conditional use permit upon a finding that the permitted uses of the property are essential or desirable to the public convenience or welfare, and are in harmony with the various elements or objectives of the master plan."

And the court held, at page 361: "*The determination of what harmonizes with the elements and objectives of the master zoning plan having been committed to the discretion of the local governing bodies*, the burden of proving that the city council acted without substantial evidence and in excess of jurisdiction, rested upon appellants." (Italics added.)

We feel that the case of *Wheeler* v. *Gregg, supra*, is particularly pertinent as the court in its opinion expressed the basic and fundamental principle of due process as applied to ordinances such as the one before us. At page 362 the court said:

"The essential requirement of due process is met when the administrative body is required to determine the existence or nonexistence of the necessary facts before any decision is made. Such a discretion is not arbitrary or so unguided as to invalidate the statute or ordinance. (*People* v. *Walton*, 70 Cal.App.2d Supp. 862, 870 [161 P.2d 498].)" (See also *Essick* v. *City of Los Angeles*, 34 Cal.2d 614, 617 [213 P.2d 492]; *Johnston* v. *Board of Supervisors*, 31 Cal.2d 66, 72 [187 P.2d 686]; *Childs* v. *City Planning Com.*, 79 Cal.App.2d 808, 811 [180 P.2d 433]; *Rubin* v. *Board of Directors*, 16 Cal.2d 119, 124 [104 P.2d 1041]; *Otis* v. *City of Los Angeles*, 52 Cal. App.2d 605, 613 [126 P.2d 954].)

Up to this point our discussion relating to due process and equal protection of the law has been confined to an interpretation of the ordinance as such. If, as respondents foresee, the ordinance is enforced arbitrarily or there is an abuse of discretion in the administration thereof, the injured party would have recourse to the courts.

## Transcript of Proceedings Necessary?

Respondents have raised the question of whether it was necessary for petitioners to attach to their petition a record of the proceedings before the planning commission and the board of supervisors. We do not consider the question to be an issue on this appeal as the clerk's transcript reflects that the trial court ordered the record of the planning commission and the record of the board of supervisors to be filed. This order was entered before the amended petition was filed. Even so, this action is not a request for a review of discretionary administrative proceeding. Rather, the gist of the action is a violation of the ordinance and the principal question is the interpretation of the ordinance. It is not necessary in order to state a cause of action that a copy of the transcript of the proceedings be attached to the petition (*Livingson Rock etc. Co.* v. *County of Los Angeles,* 43 Cal.2d 121, 128-129 [272 P.2d 4]). And finally, if the petition were defective because a transcript of the proceedings had not been attached to the petition, such procedural defect would not justify an order sustaining the demurrer without leave to amend. (*Wennerholm* v. *Stanford Univ. Sch. of Medicine,* 20 Cal.2d 713 [128 P.2d 522, 141 A.L.R. 1358]; Witkin, California Procedure, vol. 2, p. 1496.)

## Special Damage

Respondents also assert petitioners have not shown any special interest or special damage that would entitle them to file this action. The petitioners are the owners of real property within the zoned area and as such they are restricted in the use of their property by the zoning ordinance. Each of such property owners has an interest in the enforcement of the ordinance which is peculiar to him. If the ordinance is violated, he suffers special damage that is distinguishable from that suffered by the public at large. The special damage cases cited by respondents are primarily actions wherein one individual has attempted to sue another private party for damages, or an action which has been brought to enjoin a nuisance, or a matter in which there has been an effort to secure a writ of mandate to require a public official to exercise his administrative discretion. In our case, petitioners allege that the law has been violated and they seek to have the board of supervisors comply with the ordinance which the county enacted. An owner of property within a zoned district is restricted in the use and occupation of his property by law. If he were to be prevented from going to court to seek

redress for an alleged violation of that same statute by the board of supervisors or any public official, certainly there would be a denial of equal protection of the law. The private citizen would be subject to the burdens and obligations of the statute, yet denied the right to protect the integrity and character of his property by the same ordinance.

Judgment reversed.

Mussell, Acting P. J., and Shepard, J., concurred.

Respondents' petitions for a hearing by the Supreme Court were denied July 22, 1959.