[Civ. Nos. 37644, 38114. First Dist., Div. Three. Jan. 17, 1977.]

HILDUR KEHOE et al., Plaintiffs and Appellants, v.
CITY OF BERKELEY et al., Defendants and Respondents.

**COUNSEL**

David Mundstock for Plaintiffs and Appellants.

Lois L. Johnson, Donald P. McCullum and Michael Lawson, City Attorneys, Susan Watkins and Dennis Lee, Associate City Attorneys, and Benjamin D. James, Jr., for Defendants and Respondents.

## OPINION

**SCOTT, Acting P. J.**—Appellants appeal from a judgment of dismissal entered upon the sustaining of respondents' demurrer to their complaint without leave to amend, and from a denial of their petition for injunctive relief.[1] Appellants include certain members of the Berkeley City Council, members of the Berkeley Hearing Advisory and Appeals Board, and the Ocean View Committee, an organization of West Berkeley residents. Respondents are the City of Berkeley, the Berkeley Redevelopment Agency (hereinafter Agency), a demolition contractor, and various city and agency officials.

The complaint in case No. 37644, in which the demurrer was sustained, sought to enjoin demolition of certain buildings located in an urban renewal area of the Agency known as West Berkeley Industrial Park. The complaint alleged that the City Manager of Berkeley issued demolition permits without compliance with the procedures set forth in the Berkeley Neighborhood Preservation Ordinance (hereinafter NPO) for the issuance of such permits. During the pendency of that action, the City Manager of Berkeley issued other demolition permits for structures within the West Berkeley Industrial Park, allegedly without compliance with the NPO. Three of the buildings were in fact demolished. Action No. 38114 sought an injunction against the issuance of any more demolition permits or the demolition of any buildings within the redevelopment project without compliance with the NPO.

I. ██ Respondents first contend that appellants do not have standing to maintain the instant action[2] in that they have failed to show any personal or peculiar injury. Appellants counter that the action is being maintained as a taxpayer suit under the provisions of Code of Civil Procedure section 526a, which provides as follows: "An action to obtain

---

[1]The two actions are ordered consolidated on appeal for the reason that they involve the same parties and substantially the same issues.

[2]The issue of standing is raised only with respect to the complaint filed in case No. 1 Civil 38114.

a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a county, town, city or city and county of the state, may be maintained against any officer thereof, or any agent, or other person, acting in its behalf, either by a citizen resident therein, or by a corporation, who is assessed for and is liable to pay, or, within one year before the commencement of the action, has paid, a tax therein. This section does not affect any right of action in favor of a county, city, town, or city and county, or any public officer; provided, that no injunction shall be granted restraining the offering for sale, sale, or issuance of any municipal bonds for public improvements or public utilities.

"An action brought pursuant to this section to enjoin a public improvement project shall take special precedence over all civil matters on the calendar of the court except those matters to which equal precedence on the calendar is granted by law."

The Supreme Court has held that: "The primary purpose of this statute, originally enacted in 1909, is to 'enable a large body of the citizenry to challenge governmental action which would otherwise go unchallenged in the courts because of the standing requirement.' (Comment, *Taxpayers' Suits: A Survey and Summary* (1960) 69 Yale L.J. 895, 904.)

"California courts have consistently construed section 526a liberally to achieve this remedial purpose. Upholding the issuance of an injunction, we have declared that it 'is immaterial that the amount of the illegal expenditures is small or that the illegal procedures actually permit a saving of tax funds.' (*Wirin* v. *Parker* (1957) 48 Cal.2d 890, 894 [313 P.2d 844].) Nor have we required that the unlawfully spent funds come from tax revenues; they may be derived from the operation of a public utility or from gas revenues. (*Mines* v. *Del Valle* (1927) 201 Cal. 273, 279-280 [257 P. 530]; *Trickey* v. *City of Long Beach* (1951) 101 Cal.App.2d 871, 881 [226 P.2d 694].) A unanimous court in *Wirin* v. *Horrall* (1948) 85 Cal.App.2d 497, 504-505 [193 P.2d 470], held that the mere 'expending [of] the time of the paid police officers of the city of Los Angeles in performing illegal and unauthorized acts' constituted an unlawful use of funds which could be enjoined under section 526a. (See also *Vogel* v.

*County of Los Angeles* (1967) 68 Cal.2d 18 [64 Cal.Rptr. 409, 434 P.2d 961].)

"We have even extended section 526a to include actions brought by nonresident taxpayers (*Irwin* v. *City of Manhattan Beach* (1966) 65 Cal.2d 13, 18-20 [51 Cal.Rptr. 881, 415 P.2d 769). In *Crowe* v. *Boyle* (1920) 184 Cal. 117, 152 [193 P. 111], we stated: 'In this state we have been very liberal in the application of the rule permitting taxpayers to bring a suit to prevent the illegal conduct of city officials, and no showing of special damage to the particular taxpayer has been held necessary.' " (*Blair* v. *Pitchess* (1971) 5 Cal.3d 258, 267-268 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206]; see also *Harman* v. *City and County of San Francisco* (1972) 7 Cal.3d 150, 159-160 [101 Cal.Rptr. 880, 496 P.2d 1248].)

Appellants allege that they are "City of Berkeley citizens, residents, and taxpayers" and seek to prevent the unlawful issuance of permits by city officials. Under the principles enunciated in the *Blair* case, these allegations are sufficient to give appellants standing pursuant to Code of Civil Procedure section 526a.

II. The NPO, which appellants allege has not been followed by respondents in the issuance of building demolition permits, was adopted in April of 1973 as an initiative ordinance. The stated purpose of the ordinance is "to deal with an emergency situation arising from current development trends in the City of Berkeley," to wit, the reduction in the stock of low rent older homes. The ordinance sets forth a procedure for correcting the deficiencies in Berkeley's Master Plan and Zoning Ordinance, and contains interim regulations restricting the issuance of building and demolition permits until such time as a new master plan is adopted. As of the date of this appeal no master plan had been adopted by the City of Berkeley, as contemplated by the NPO; therefore, the provisions of the NPO regulating the granting of demolition permits was still in force and effect.[3]

---

[3]Section 5 of the NPO (Ordinance No. 4641-N.S.), which regulates the granting of demolition permits, provides as follows:

"Section 5. INTERIM BUILDING DEMOLITION REGULATIONS

"In order to protect the stock of older housing during the period between the enactment of the 'Neighborhood Preservation Ordinance' and the final acceptance by the Berkeley City Council of the revised Master Plan and Zoning Ordinance, no residential demolition permits shall be issued except in conformity with the following requirements:

"(a) DEMOLITION PERMITS. Demolition permits shall be required for the demolition of structures containing one or more residential units. These permits shall be issued

Appellants allege that the demolition permits in the instant cases were issued without compliance with the ordinance, and hence should be deemed invalid.[4] Respondents contend that the Redevelopment Agency, as a state agency, is not subject to regulation by Berkeley ordinances, and they further contend that even if they were subject to such ordinances, the demolition permit provisions of the NPO are not an "applicable building ordinance" with which they must comply as a local agency within the provisions of Government Code section 53091.

A. We first address ourselves to the question of what regulatory power, if any, a city has over an urban renewal district created under the Community Redevelopment Law (hereinafter CRL). (Health & Saf. Code, § 33000 et seq.) The Berkeley Redevelopment Agency was created in 1967 pursuant to the CRL.

Government Code sections 53090-53094 (Regulation of Local Agencies by Counties and Cities) create a statutory exception to the rule that state agencies are to be regulated only by the state. (*Hall* v. *City of Taft* (1956) 47 Cal.2d 177 [302 P.2d 574]; *In re Means* (1939) 14 Cal.2d 254 [93 P.2d 105]; *Town of Atherton* v. *Superior Court* (1958) 159 Cal.App.2d 417 [324 P.2d 328].) Under these sections of the Government

by the Board of Adjustments. Decisions of the Board of Adjustments may be appealed to the City Council by any interested party.

"(b) GRANTING OF DEMOLITION PERMITS. A demolition permit may be granted if, from all the facts presented at a duly called public hearing at the Board of Adjustments, or the City Council upon appeal, finds:

"(1) That the demolition would not be materially detrimental to the housing needs and public interest of the affected neighborhood and the City of Berkeley, and

"(2) That the developer and/or owner of the proposed construction has provided alternative housing for the residents of the structure to be demolished, and further that this relocation housing is consistent with HUD relocation guidelines, including standards for a choice of housing of comparable quality and costs within the same community if the relocatee(s) so desire, and either

"(3) That the demolition will remove a hazardous, unusable or unrepairable structure, or

"(4) That the demolition is necessary to permit construction approved pursuant to Section 4, and with the additional requirement that such construction contain at least the same number of housing units as the demolished structure, and further, that provisions have been made for persons displaced by the proposed construction to have first choice in the new housing."

[4]Appellants argue that their complaint setting forth one cause of action encompasses six separate theories of liability. However, the basic assumption underlying five of these theories is that the NPO is applicable to the particular Redevelopment Agency activities sought to be enjoined. The sixth purported cause of action is based upon an extortion theory, and is discussed *infra*.

Code, "all local agencies are required to comply" with all applicable city or county building and zoning ordinances (*City of Santa Clara* v. *Santa Clara Unified Sch. Dist.* (1971) 22 Cal.App.3d 152, 158 [99 Cal.Rptr. 212]; Gov. Code, § 53091). "Building ordinances" include ordinances of a county or city regulating ·the construction and removal of buildings. (Gov. Code, § 53090, subd. (b).) Ordinances establishing demolition permit requirements are thus included within the statute.

Government Code section 53090, subdivision (a), defines "local agency" as "an agency of the state for the local performance of governmental or proprietary function within limited boundaries." We find no case interpreting the term "local agency." It has been suggested that "as a general proposition, any district, agency, or authority created or authorized by state law and exercising governmental functions within limited territorial boundaries . . . is an agency of the State for the local operation of some governmental function," and hence should be deemed a local agency within the purview of Government Code section 53090. (Opinion of Legislative Counsel, contained in Problems of Local Government Resulting from the *Hall* v. *City of Taft* Case Decision, 6 Assem. Interim Com. Rep. No. 8; pp. 20, 22, 1 Appendix to Assem. J. (1959).) A community redevelopment agency such as respondent clearly falls within this definition. (*Id.*; Health & Saf. Code, §§ 33002-33005, 33120, 33122-33123.) We conclude that the Agency is a local agency within the meaning of Government Code section 53090. Therefore, it must comply with all applicable building and zoning ordinances of the City of Berkeley.

B. ██ Respondents assert that although the Agency may be a "local agency" under the Government Code provisions, the demolition permit requirements of the NPO should nevertheless be deemed inapplicable to its activities. We agree, and conclude that section 5 of the NPO is not an "applicable building ordinance" within the meaning of Government Code section 53091.

In 1967 the Berkeley Redevelopment Agency adopted a "Plan," which provided for the acquisition of an area known as West Berkeley Industrial Park and reuse of the land for commercial and light industrial development. Residential use is prohibited. The Plan provides for the demolition and removal of buildings within the project area. (Berkeley City Ordinance No. 4271-N.S.)

In May 1975, the Agency approved the demolition of 15 residences, which are the subject matter of this litigation, "to improve the Agency's ability to market land owned by the Agency." The demolition contracts were awarded and the permits issued by the City Manager of Berkeley. The residences in question were vacant, all former occupants having been relocated outside the project area in accordance with the Plan, as required by Health and Safety Code sections 33410-33418.

The applicability of the NPO provisions regarding demolition permits turns on whether those provisions conflict with the state statutes which govern community redevelopment agencies. We conclude that a conflict does in fact exist. Therefore, the local ordinance must give way to the state statute which is controlling. (Cal. Const., art. XI, § 7; *Galvan* v. *Superior Court* (1969) 70 Cal.2d 851, 859 [76 Cal.Rptr. 642, 452 P.2d 930]; *In re Koehne* (1963) 59 Cal.2d 646 [30 Cal.Rptr. 809, 381 P.2d 633].)

We turn now to an evaluation of pertinent portions of the NPO which conflict with the Community Redevelopment Law. Before a demolition permit may be granted under the NPO, the board of adjustments must determine that certain conditions have been met. The first finding requires that the demolition will not be materially detrimental to the housing needs and public interest of the affected neighborhood and the City of Berkeley. If this requirement were applied to the Agency, it would call for a redetermination of the policy which was established in the original adoption of the Plan in 1967.[5]

The second finding of the NPO requires that the owner and/or developer (here it would be the Agency) provide alternative housing for the residents of the structures to be demolished. Such relocation is mandated by comprehensive legislation set forth in Health and Safety Code sections 33410-33418. The application of a similar local ordinance would be meaningless.

---

[5]City of Berkeley Ordinance No. 4271-N.S., establishing the Berkeley Redevelopment Agency, provides in relevant part:

Section 5b: "That the redevelopment of the Project Area is necessary to effectuate the public purposes declared in said Community Redevelopment Law."

Section 5c: "That said Redevelopment Plan would redevelop the Project Area in conformity with said Community Redevelopment Law and in the interests of the public peace, health, safety and welfare."

Section 5d: "That the adoption and carrying out of the Redevelopment Plan is economically sound and feasible."

Section 5f: "That the carrying out of said Redevelopment Plan would promote the public peace, health, safety, and welfare of the City of Berkeley and would effectuate the purposes and policy of said Community Redevelopment Law."

The third and fourth findings prescribed by the NPO are in the alternative, that is, a finding that the demolition will remove a hazardous, unusable or unrepairable structure (in effect, a blighted structure), or a finding that an alternative new structure can be built to house the displaced residents. Health and Safety Code sections 33030-33039 define blighted areas which are subject to redevelopment.

The CRL contemplates a determination of area blight, declaring that a "project area need not be restricted to buildings, improvements, or lands which are detrimental or inimical to the public health, safety, or welfare, but may consist of an *area* in which such conditions predominate. . . ." (Health & Saf. Code, § 33321; italics added.) By contrast, section 5 of the NPO mandates a structure by structure determination of blight, and therefore is in conflict with the state law. The CRL plans would permit perfectly sound structures to be demolished, whereas the NPO could require the preservation of such structures and frustrate the purpose of the redevelopment plan. Structure by structure blight is not necessary under the CRL. (*Redevelopment Agency* v. *Hayes* (1954) 122 Cal.App.2d 777 [266 P.2d 105].) The NPO is designed to preserve neighborhoods, whereas the CRL envisions redevelopment of blighted areas, which may include rehabilitation of specific structures. (Health & Saf. Code, §§ 33411.4, 33444.) ■ In any event, in the adoption of the plan by the city council, the project area was found to be blighted, and as such that finding is conclusive. (Health & Saf. Code, § 33368; see *Sweetwater Valley Civic Assn.* v. *City of National City* (1976) 18 Cal.3d 270 [133 Cal.Rptr. 859, 555 P.2d 1099].)

■ The alternative finding is equally conflicting with the CRL. It would require construction of alternative residences within the neighborhood of the demolished structures which would contain at least the number of housing units as the demolished structures. Such residential development within the project area would be in direct conflict with the redevelopment ordinance, *supra.* The determination of nonresidential use by the city is conclusive.

· Health and Safety Code section 33500 provides for a 60-day statute of limitations applicable to any action attacking or otherwise questioning the validity of any redevelopment plan from and after the date of the adoption of the ordinance adopting the plan. Such time is long past here. Therefore, there can be no challenge to the nonresidential feature of the plan. (*Sweetwater Valley Civic Assn.* v. *City of National City, supra,* 18

Cal.3d at pp. 276-277.) We note further that the power to amend the plan is vested in the city council upon the recommendation of the agency (Health & Saf. Code, § 33450), and only after appropriate hearings (Health & Saf. Code, § 33451 et seq.). To the extent that the NPO purports to modify or amend the plan previously adopted, it conflicts with the state statutes governing the proper manner of amendment and therefore must fail as an amendment to the redevelopment plan.

C. Appellants assert, in their brief, that the motivation for the initiative which led to adoption of the NPO was the preservation of residences within West Berkeley Industrial Park, that is, within the project area of the urban renewal district itself. The avowed purpose of the NPO is the preservation of older homes. Yet the very essence of the Redevelopment Agency's project is to remove the older homes and rebuild the area with commercial and light industrial development. Appellants argue that this does not necessarily create an inconsistency in that the Agency can cause residences found to be salvageable under the NPO to be removed from the project area and relocated in other parts of Berkeley. ■ The decision as to whether to demolish or move a structure outside of the project area is within the discretion of the Agency. (See *Babcock* v. *Community Redev. Agency* (1957) 148 Cal.App.2d 38 [306 P.2d 513].) To offer the structures for sale conditioned upon their removal would be within the Agency's discretion; however, to mandate relocation of the structures is not contemplated by the CRL absent a plan that includes such relocation of structures. In any event, appellants fail to suggest what possibility exists for the Agency to acquire property outside of the district upon which the homes would be relocated, what to do with the salvageable homes if there were no alternative available lots, or what would be involved in bringing the homes up to the requirements of the local building code.

III. In view of our holding that the regulation of the issuance of demolition permits within a redevelopment project is preempted by state law, it is not necessary to address ourselves to respondents' contention that under the holding of *Urban Renewal Agency* v. *California Coastal Zone Conservation Com.* (1975) 15 Cal.3d 577 [125 Cal.Rptr. 485, 542 P.2d 645], they have obtained a vested right to proceed with the project and therefore are exempt from the provisions of the NPO.

IV. ■ Appellants urge that they have adequately stated a cause of action for extortion, namely, that the city manager issued the demolition

permits in question "under extreme political pressure from certain members of the Berkeley City Council and other persons."

Extortion is defined as "the obtaining of property from another, with his consent, or the obtaining of an official act of a public officer, induced by a wrongful use of force or fear, or under color of official right." (Pen. Code, § 518.) Penal Code section 522 provides: "Every person who, by any extortionate means, obtains from another his signature to any paper or instrument, whereby if such signature were freely given, any property would be transferred, or any debt, demand, charge, or right of action created, is punishable in the same manner as if the actual delivery of such debt, demand, charge, or right of action were obtained." An allegation to the effect that an official signature was obtained under extreme political pressure does not constitute extortion or extortionate means under the above statutes. (See generally 1 Witkin, Cal. Crimes (1963) §§ 443-450, pp. 408-414.)

Moreover, we have concluded that the NPO is not applicable to the demolition of buildings within the Agency's project area. The action of the city manager in issuing the demolition permits was wholly proper and could not be said to have occurred as the result of extortion. Therefore, no cause of action can in fact be pleaded.

Judgments are affirmed.

Devine, J.,* and Good, J.,† concurred.

A petition for a rehearing was denied February 16, 1977, and appellants' petition for a hearing by the Supreme Court was denied March 17, 1977.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

†Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.