[Civ. No. 41183. First Dist., Div. Four. Apr. 21, 1978.]

REDEVELOPMENT AGENCY OF THE CITY OF BERKELEY, Plaintiff and Respondent, v.
CITY OF BERKELEY et al., Defendants and Respondents;
OCEAN VIEW COMMITTEE, Intervener and Appellant.

COUNSEL

David Mundstock, Fred H. Altshuler and Stephen P. Berzon for Intervener and Appellant.

Michael Lawson, City Attorney, for Plaintiff and Respondent and for Defendants and Respondents.

OPINION

CALDECOTT, P. J.—This is an appeal from a judgment of the Alameda County Superior Court declaring invalid, initiative Ordinance Q, a measure purporting to amend the City of Berkeley's redevelopment plan, and permanently enjoining implementation of any provision of that ordinance. We affirm the judgment.

On July 26, 1966, the Berkeley City Council determined that it should no longer function as the city's urban renewal agency. Therefore, pursuant to Health and Safety Code section 33203, the city council created a separate urban renewal agency, the Berkeley Redevelopment Agency (hereinafter referred to as BRA).

In early 1967, BRA adopted a redevelopment plan for the West Berkeley Industrial Park Project pursuant to Health and Safety Code section 33330 et seq. The plan sought to create an environment which would attract new industries, by the elimination of blighting influences, including adverse mixtures of residential and industrial uses. Under the industrial park plan, all residential uses are to be prohibited throughout the project area. The redevelopment plan was adopted by the city council on July 20, 1967, and was subsequently approved by the Department of Housing and Urban Development (HUD).

The Ocean View Committee, intervener and appellant, consists of tenants and homeowners residing within the industrial park boundaries and in the immediate adjacent areas, who oppose implementation of the industrial park plan. After unsuccessfully presenting to the city council and BRA a series of legislative reform proposals designed to save homes within the industrial park area from destruction, the Ocean View Committee sponsored two initiative ordinances to accomplish that end. The initiative ordinances were approved by the Berkeley electorate on June 8, 1976.

Initiative Ordinance "P," the Redevelopment Accountability Ordinance, provided that the members of the city council shall replace the appointed governing board of BRA as the Redevelopment Agency of the City of Berkeley.[1]

Ordinance "Q," the Ocean View Neighborhood Preservation and Residential Planning Ordinance, was designed to halt redevelopment of the six residential blocks in the industrial park area and to restore it as a residential neighborhood.

In summary, Ordinance Q provides that:

"(a) the six square block area is rezoned from 'Special Industrial' (SI) and 'Manufacturing' (M) to 'Restricted Multiple Family Residential' (R-2A). Corresponding changes are made to Berkeley's Master Plan. (Section 5 of Ordinance Q);

"(b) the redevelopment project plan and land use plan are amended in conformance with the new R-2A zoning and a new section is added

---

[1]Subsequent to the election the city council, by ordinance, declared itself to be the city's redevelopment agency and thereby rendered moot any allegation of invalidity as to initiative Ordinance P.

providing for the rehabilitation and lease or sale of existing sound housing and for the construction of new replacement housing in the six square block area. All existing uses which do not conform to the residential zoning are granted use permits to remain. The plan is renamed the West Berkeley Redevelopment Project Plan. (Section 4, 6 & 8);

"(c) an elected Project Area Committee is established, to be composed of organizational representatives and neighborhood residents elected at large. (Section 9);

"(d) Berkeley's Ordinance 4641-NS, Zoning Ordinance (3018-NS), and affirmative action compliance program (Resolution 46,913-NS), are declared to be applicable to the B.R.A. (Sections 7 & 10);

"(e) an environmental impact report on the effect of the ordinance is to be prepared in accordance with state and federal law. (Section 12);

"(f) employment opportunity notices (Section 11), notices to the Department of Housing and Urban Development and to B.R.A. creditors (Section 13), and annual reports to the voters on the source and allocation of tax allocation bond revenues (Section 14) are to be issued;

"(g) the various provisions of the ordinance are declared to be severable (Section 15), and the ordinance is declared to supersede any conflicting Berkeley ordinances or resolutions."

I

On June 15, 1976 (one week after the election), BRA commenced the present action for injunctive and declaratory relief against the City of Berkeley and the Berkeley City Council. Approximately one month thereafter, the Berkeley City Council, pursuant to Health and Safety Code section 33200, declared itself to be the city's redevelopment agency. On August 27, 1976, BRA ceased to exist, and all redevelopment powers vested in the Berkeley City Council.

██ Appellant Ocean View Committee contends that the case should have been dismissed because of the merging identities of plaintiff and defendant. It is appellant's position that the assumption by the Berkeley City Council of the powers and duties of the Berkeley Redevelopment Agency altered the relationship between the parties so fundamentally as

to eliminate any legal controversy between them. Appellant therefore challenges the judgment as an improper exercise of the trial court's jurisdiction.

■ It is contrary to public policy for one person to control both sides of litigation. (*O'Morrow* v. *Borad* (1946) 27 Cal.2d 794, 797 [167 P.2d 483, 163 A.L.R. 894].) An action not founded upon an actual controversy between the parties to it, and brought for the purpose of securing a determination of a point of law, is collusive and will not be entertained. (*Golden Gate Bridge etc. Dist.* v. *Felt* (1931) 214 Cal. 308, 316 [5 P.2d 585].) It necessarily follows that the same party cannot be plaintiff and defendant in the same lawsuit, even though he sue in one capacity and defend in another. (*Buckeye Refining Co.* v. *Kelly* (1912) 163 Cal. 8, 14 [124 P. 536]; *O'Morrow* v. *Borad, supra,* 27 Cal.2d 794 at p. 799; *Byrne* v. *Byrne* (1892) 94 Cal. 576, 580 [29 P. 1115, 30 P. 196]; *Globe & Rutgers Fire Ins. Co.* v. *Hines* (2d Cir. 1921) 273 Fed. 774, 777; *United States* v. *Easement and Right of Way, etc.* (E.D.Tenn. 1962) 204 F.Supp. 837, 839.)

■ However, in the present action, the appellant Ocean View Committee intervened in support of defendants' position.[2] Code of Civil Procedure section 387, subdivision (a), provides in part: ". . . An intervention takes place when a third person is permitted to become a party to an action or proceeding between other persons, either by joining the plaintiff in claiming what is sought by the complaint, or by uniting with the defendant . . . ." The date on which appellant became a party does not appear in the record though the name of appellant's attorney appears in the court's minutes of July 22, 1976. Thus, appellant became a party in the case on or before that date. On August 26 or August 27, 1976, the ordinance adopted by the Berkeley City Council, declaring itself to be the Redevelopment Agency of the City of Berkeley, became effective and any legal controversy between the plaintiff BRA, and defendant City of Berkeley, was eliminated. However, at this time the Ocean View Committee was an actual and legal party to the action with interest adverse to those of the defendant City of Berkeley. An actual controversy existed between these parties. (See *Eggers* v. *National Radio Co.* (1929) 208 Cal. 308, 313 [281 P. 58].)

---

[2]The record does not include the complaint in intervention or the order of the court granting leave to file the complaint. However, the right to intervene is not raised as an issue in the case.

## II

█ Respondents contend that appellant is precluded from taking an appeal in this action by reason of its failure to appear at trial.[3] Respondents argue that appellant thereby abandoned or waived its right to appeal. This argument is without merit.

█ We begin with the general rule that any party having an interest recognized by law in the subject matter of the judgment, which interest is injuriously affected by the judgment, is a party aggrieved and entitled to be heard upon appeal (*County of Alameda* v. *Carleson* (1971) 5 Cal.3d 730, 737 [70 Cal.Rptr. 385, 488 P.2d 953]; Code Civ. Proc., § 902; *Jarkieh* v. *Badagliacco* (1945) 68 Cal.App.2d 426, 431 [156 P.2d 969]); therefore, the right of appeal should be recognized wherever it is not precluded by statute, and it should not be denied upon technical grounds if the appellant is acting in good faith. (*Greif* v. *Dullea* (1944) 66 Cal.App.2d 986, 993 [153 P.2d 581].)

█ Under the doctrine of invited error, where a party, by his conduct, induces the commission of an error, he is estopped from asserting it as grounds for reversal. (See *Abbott* v. *Cavalli* (1931) 114 Cal.App. 379, 383 [300 P. 67]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 266, p. 4257.) █ Similarly, an appellant may waive his right to attack error by expressly or impliedly agreeing at trial to the ruling or procedure objected to on appeal. (6 Witkin, Cal. Procedure, *supra,* § 270, p. 4260.)

█ There is no basis for concluding that appellant waived his right to challenge the court's exercise of jurisdiction in the present case. By its declaration objecting to the trial court's exercise of jurisdiction, appellant notified the court of the collusive nature of the action. We therefore conclude that appellant is not estopped from asserting this issue on appeal.

A question remains as to the permissible scope of appellant's appeal. Appellant seeks review not only of the trial court's refusal to dismiss the action, but also of its rulings on the merits.

---

[3]Appellant did not appear at trial. It did, however, file a declaration challenging the jurisdiction of the court to hear the case in view of merging of identities between plaintiff and defendant. The declaration was "in lieu of intervener's appearance and presentation at trial." This course of action was chosen so as to avoid any appearance of consent to what appellant regarded as a collusive and sham trial.

■ As a general rule, failure to raise a point in the trial court constitutes of waiver and appellant is estopped to raise that objection on appeal. An exception to the general rule may be presented, however, where the theory presented for the first time on appeal involves only a legal question determinable from facts which not only are uncontroverted in the record, but which could not be altered by the presentation of additional evidence. (*Mattox* v. *Isley* (1952) 111 Cal.App.2d 774, 780 [245 P.2d 664].) And whether the general rule shall be applied is largely a question of the appellate court's discretion. (See *Isthmian Lines, Inc.* v. *Schirmer Stevedoring Co.* (1967) 255 Cal.App.2d 607, 610 [63 Cal.Rptr. 458].)

The questions concerning the validity of Ordinance Q were considered by the court below. As they are solely matters of law, we will discuss the merits of the appeal.

III

■ Appellant contends that the subject of Ordinance Q is legislative in nature, and is therefore a proper subject of the initiative process. On the other hand, respondent takes the position that the actions involved in Ordinance Q are an exercise of the administrative powers of the Berkeley Redevelopment Agency, and are therefore not subject to initiative proceedings.

■ It is plain that only ordinances of a municipality which involve an exercise of the legislative prerogative are subject to the initiative and referendum. (*Hopping* v. *Council of City of Richmond* (1915) 170 Cal. 605, 611 [150 P. 977]; see also e.g., *Dwyer* v. *City Council* (1927) 200 Cal. 505, 511 [253 P. 932]; *Walker* v. *City of Salinas* (1976) 56 Cal.App.3d 711, 714-715 [128 Cal.Rptr. 832].) Although we recognize that the initiative power reserved to a city by charter must be liberally construed (*Associated Home Builders etc., Inc.* v. *City of Livermore* (1976) 18 Cal.3d 582, 591 [135 Cal.Rptr. 41, 557 P.2d 473]), "[n]evertheless, the courts have hewn a path between administrative and legislative matters. In *McKevitt* v. *City of Sacramento, supra,* [(1921) 55 Cal.App. 117, 124 (203 P. 132)] the dividing line was described as follows: 'Acts which are to be deemed as acts of administration, and classed among those governmental powers properly assigned to the executive department, are those which are necessary to be done to carry out legislative policies and purposes already declared by the legislative body, or such as are devolved upon it by the organic law of its existence.' (55 Cal.App. at p. 124. See also

*Hughes* v. *City of Lincoln, supra,* 232 Cal.App.2d 741, 744-745 [43 Cal.Rptr. 306]; *Valentine* v. *Town of Ross, supra,* 39 Cal.App.3d 954, 957-958 [114 Cal.Rptr. 678]; *O'Loane* v. *O'Rourke, supra,* 231 Cal.App.2d 774, 784 [42 Cal.Rptr. 283]; *Reagan* v. *City of Sausalito, supra,* 210 Cal.App.2d 618, 621-622 [26 Cal.Rptr. 775]; and *Martin* v. *Smith, supra,* 184 Cal.App.2d 571, 575 [7 Cal.Rptr. 725].)" (*Walker* v. *City of Salinas, supra,* 56 Cal.App.3d 711 at pp. 715-716.)

■ The principle is well established that the local governing body is carrying out state policy when it acts in proceedings under the Community Redevelopment Law. As the court explained in *Gibbs* v. *City of Napa* (1976) 59 Cal.App.3d 148, 153 [130 Cal.Rptr. 382]: "The policy question, whether a city's redevelopment agency shall function, is of a legislative nature. But when the need for the agency to function is determined, 'all considerations of wisdom, policy and desirability connected with the functioning of a redevelopment plan [become] settled . . . .' The agency's acts thereafter fall 'within the executive or administrative functions.' And case authority makes it 'clear that once the legislative policy is established . . . the administrative acts following therefrom are not subject to referendum.' (*Andrews* v. *City of San Bernardino,* 175 Cal.App.2d 459, 462-463 . . . ; see also *In re Redevelopment Plan for Bunker Hill,* 61 Cal.2d 21, 39 . . . ; *Housing Authority* v. *City of L. A.,* 38 Cal.2d 853, 862 . . . ; *Housing Authority* v. *Superior Court,* 35 Cal.2d 550, 557 . . . ; *Walker* v. *City of Salinas,* 56 Cal.App.3d 711, 715-718 . . . ; *Lincoln Property Co. No. 41, Inc.* v. *Law,* 45 Cal.App.3d 230, 233-234, 236 . . . ; *Valentine* v. *Town of Ross,* 39 Cal.App.3d 954, 959 . . . ; *Duran* v. *Cassidy,* 28 Cal.App.3d 574, 580-581 . . . .)"

Appellant acknowledges that language in *Andrews* v. *City of San Bernardino* (1959) 175 Cal.App.2d 459 [346 P.2d 457], *Walker* v. *City of Salinas, supra,* 56 Cal.App.3d 711, and *Gibbs* v. *City of Napa, supra,* 59 Cal.App.3d 148, indicates that in the field of redevelopment, a local agency operates as an administrative arm of the state since it pursues a state concern and effectuates a state legislative policy. But it contends that these cases should be reviewed and disapproved because they assumed that no difference exists between Housing Authority Law and Community Redevelopment Law. Appellant contends that this assumption is incorrect with respect to the degree to which charter cities may apply their own procedures in adopting the amending redevelopment plans.

Appellant relies upon Health and Safety Code section 33204, which provides as follows: "A chartered city may enact its own procedural ordinance and exercise the powers granted by this part." It argues that this section evidences a legislative intent to make redevelopment ordinance adoption procedures a municipal affair. Appellant therefore concludes that Community Redevelopment Law does not preclude a charter city from using the initiative procedure to adopt redevelopment laws.

Chartered cities have full power to regulate municipal affairs, and ordinances governing municipal affairs supersede general laws insofar as the latter conflict with the ordinance unless the state has preempted the field. (*Bellus* v. *City of Eureka* (1968) 69 Cal.2d 336, 346 [71 Cal.Rptr. 135, 444 P.2d 711]; see Cal. Const., art. XI, § 5.)

A legislative intent to preempt the field of community redevelopment is apparent. The fundamental purpose of the Legislature in enacting the Community Redevelopment Law was "to expand the supply of low- and moderate-income housing, to expand employment opportunities for jobless, underemployed, and low-income persons, and to provide an environment for the social, economic, and psychological growth and well being of all citizens" (Health & Saf. Code, § 33071) through the elimination of blight. (Health & Saf. Code, §§ 33030, 33035-33039.) The redevelopment of blighted areas was declared to be a governmental function of *state concern,* in the interest of health, safety and welfare of the people of the state and of the communities in which the areas exist. (Health & Saf. Code, § 33037, subd. (c).)

In view of the Legislature's intent to preempt the field, we conclude that Health and Safety Code section 33204 does not authorize a charter city to regulate the administrative actions of the city's redevelopment agency by initiative proceedings.

Appellant contends that the 1977 amendments of the Community Redevelopment Law (Health & Saf. Code, §§ 33141, 33365 and 33450), expressly authorize the use of the referendum in both general law and charter cities. Appellant, however, is not attempting to invalidate an ordinance adopted by the city council, but instead, is offering its own ordinance through the initiative process. Nothing in the 1977 amendment authorizes such action.

# IV

▆ Appellant further contends that Ordinance Q is a valid exercise of the Berkeley's electorate's power to enact a zoning change by initiative. (*San Diego Bldg. Contractors Assn.* v. *City Council* (1974) 13 Cal.3d 205, 209 [118 Cal.Rptr. 146, 529 P.2d 570, 72 A.L.R.3d 973].) It therefore argues that under Government Code section 53091, the Redevelopment Agency for the City of Berkeley must comply with the provisions of Ordinance Q.

Government Code section 53091 provides: "Each local agency shall comply with all applicable building ordinances and zoning ordinances of the county or city in which the territory of the local agency is situated." The Berkeley Redevelopment Agency is a local agency within the meaning of section 53090. (*Kehoe* v. *City of Berkeley* (1977) 67 Cal.App.3d 666, 673 [135 Cal.Rptr. 700].) However, the local building code or zoning ordinances which conflict with state statutes governing community redevelopment agencies are not "applicable" ordinances within the meaning of section 53090. (*Id.,* at pp. 673-674; cf. *Walker* v. *City of Salinas, supra,* 56 Cal.App.3d 711 at p. 717.)

The plan adopted by the Berkeley Redevelopment Agency in 1967, provided for the acquisition of the West Berkeley Industrial Park area, and reuse of the land for commercial and light industrial development. Residential use is prohibited. The plan also provides for the demolition and removal of buildings within the project area. This determination of nonresidential use by the city is conclusive. (*Kehoe* v. *City of Berkeley, supra,* 67 Cal.App.3d at p. 675; see Health & Saf. Code, § 33368.)

In contrast, Ordinance Q is designed to preserve the residential character of the eastern portion of the West Berkeley Industrial Park area. It provides, inter alia, that that portion be rezoned from special industrial and manufacturing uses to restricted multiple family residential uses. In addition, it requires that the redevelopment agency preserve and rehabilitate existing repairable housing, and encourage construction of low and moderate income housing within the project area. Thus Ordinance Q directly conflicts with the redevelopment ordinance, and with the Community Redevelopment Law. (See *Kehoe* v. *City of Berkeley, supra,* 67 Cal.App.3d at p. 675.)

As the court observed in *Kehoe*: "Health and Safety Code section 33500 provides for a 60-day statute of limitations applicable to any action

attacking or otherwise questioning the validity of any redevelopment plan from and after the date of the adoption of the ordinance adopting the plan. Such time is long past here. Therefore, there can be no challenge to the nonresidential feature of the plan. (*Sweetwater Valley Civic Assn.* v. *City of National City, supra,* 18 Cal.3d [270] at pp. 276-277 [113 Cal.Rptr. 859, 555 P.2d 1099].) We note further that the power to amend the plan is vested in the city council upon the recommendation of the agency (Health & Saf. Code, § 33450), and only after appropriate hearings (Health & Saf. Code, § 33451 et seq.). To the extent that the . . . [ordinance] . . . purports to modify or amend the plan previously adopted, it conflicts with the state statutes governing the proper manner of amendment and therefore must fail as an amendment to the redevelopment plan." (67 Cal.App.3d at pp. 675-676.)

The judgment is affirmed.

Christian, J., and Wilson, J.,* concurred.

A petition for a rehearing was denied May 18, 1978, and appellant's petition for a hearing by the Supreme Court was denied June 22, 1978.

*Assigned by the Chairperson of the Judicial Council.