[No. B005778. Second Dist., Div. Five. Apr. 29, 1985.]

SANFORD PHILIP PARIS, Plaintiff and Appellant, v.
COMMUNITY REDEVELOPMENT AGENCY OF THE CITY OF
PICO RIVERA et al., Defendants and Respondents.

**COUNSEL**

Lipofsky & Lande, Judith P. Meyer and Louis A. Lipofsky for Plaintiff and Appellant.

Samuel Siegel, City Attorney, and Graham A. Ritchie for Defendants and Respondents.

## OPINION

**ASHBY, Acting P. J.**—Appellant Sanford Paris appeals from the denial of his petition for writ of mandate pursuant to Code of Civil Procedure sections 1085 or 1094.5 against the Community Redevelopment Agency of the City of Pico Rivera (hereafter the Agency), the City of Pico Rivera (hereafter the City), and various individual officials.

Appellant is a business tenant with a long-term ground lease on a property along Whittier Boulevard within the City. The parcel lies in a redevelopment project area of the Agency. Appellant desires to remodel a vacant portion of a building to a walk-in movie theater, which would require issuance of a building permit and a conditional use permit under the zoning ordinance of the City. As required by the City's redevelopment plan, appellant's proposal was reviewed by the director of the Agency, who found the proposal to be inconsistent with the redevelopment plan. Upon the director's report of his findings to the city building department, the department notified appellant that no building permit would be issued. Appellant appealed to the city council, which affirmed the decision of the building department. Appellant petitioned the superior court for a writ of mandate to compel the issuance of a building permit. The court denied the writ and this appeal followed.

### THE 1974 REDEVELOPMENT PLAN

Pursuant to the state Community Redevelopment Law (Health & Saf. Code, § 33000 et seq.),[1] the City in 1974 adopted by ordinance the redevelopment plan recommended by the Agency and the city planning commission.

The subject property is within the area designated by the redevelopment plan as commercial, which was defined by the plan as follows: "Commercial uses shall include, without limitation, business offices, professional offices, retail stores and shops and other office functions as may be directly related to industry and commerce as well as the general public. [¶] All City zoning as it now exists or is hereafter amended shall apply to development hereunder. In such development, the limitation on the type, size, height, number and proposed use of buildings shall be in accordance with such zoning and the building and safety laws and regulations applicable from time to time in the City, and the provisions of this Plan. Reference should be made to the attached Exhibit E." The attached exhibit indicated that in

---

[1]All section references hereinafter are to the Health and Safety Code unless otherwise indicated.

the commercial zoning category, "professional offices" were "permitted," but only certain specified subgroups of "general retail" were permitted. The exhibit made no reference to theaters in the commercial zone.

### THE REDEVELOPMENT PLAN'S STANDARDS AND PROCEDURES FOR NEW DEVELOPMENT

Under the heading "Standards for Development" the redevelopment plan provides: "The Agency is authorized to establish heights of buildings, land coverage, design criteria, traffic circulation, traffic access, and other development and design controls necessary for proper development of both private and public areas within the Project Area. [¶] No new improvement shall be constructed and no existing improvement shall be substantially modified, altered, repaired or rehabilitated except in accordance with architectural, landscape, and site plans submitted to and approved in writing by the Agency unless allowed pursuant to the procedures of the following subsection H. One of the objectives of this Plan is to create an attractive and pleasant environment in the Project Area. Therefore such plans shall give consideration to good design, open space, and other amenities to enhance the aesthetic quality of the Project Area. The Agency shall not approve any plans that do not comply with this Plan. [¶] It is the intent of this Plan that all development in the Project Area comply with all applicable State and local laws, codes and ordinances in effect from time to time, and, in addition to any requirements of the Agency imposed pursuant to this Plan."

With respect to applications for building permits the plan provides, "Upon the adoption of this Plan no permit shall be issued for the construction of any new building or any addition to any existing building in the Project Area until the application for such permit has been processed in the manner herein provided. Any permit that is issued hereunder must be for construction which conforms to the provisions of this Plan. [¶] Upon receipt of an application for a building permit the Building Department of the City shall request the Executive Director of the Agency . . . to review the application to determine if the proposed improvements will conform to this Plan. . . ." Thereafter the director shall file with the building department a written report setting forth his findings of fact as to whether the proposed improvements would be compatible with the standards and other requirements set forth in the plan, what modifications in the proposed improvements would be necessary in order to meet the requirements of the plan, and whether the applicant has entered into an agreement with the agency for the development of said improvements and submitted architectural landscape and site plans to the agency. After receiving the report from the director, "the Building Department may issue the permit with conditions, if any, required by the Executive Director and approved by the Agency, or,

it shall withhold the issuance of the permit, if the Executive Director has found that the proposed improvement does not meet the requirements of this Plan and the design requirements of the Agency." The plan further provides for an appeal of such decision to the city council, which "may reverse or affirm wholly or partly, or may modify any decision or determination or may impose such conditions as the facts warrant, and its decision or determination shall be final."

## APPELLANT'S PROPOSAL

Appellant's building, at 9130 Whittier Boulevard, was formerly a supermarket. It was recently used in part as a Jewel-T market and was partially vacant. Appellant proposed to remodel the vacant portion of the building into a twin walk-in movie theater showing general audience films. The property lies within the general commercial zone of the City, which permits movie theaters only with a conditional use permit which the city planning commission can grant at its discretion. Since the proposed remodeling required both a building permit and a conditional use permit, and the property lay within the redevelopment area, appellant's proposal was submitted, as required by the redevelopment plan, to the director of the Agency for review.[2]

## FINDINGS OF THE DIRECTOR OF THE AGENCY

On July 15, 1983, the director reported to the city planning commission his finding that appellant's proposed improvement "does not meet the requirements of the Redevelopment Plan and the design requirements of the Agency and that it does not conform to the adopted Redevelopment Plan." He stated that the proposed use as a theater was outside the plan's definition of commercial uses as including "business offices, professional offices, retail stores and shops and other office functions as may be directly related to industry and commerce as well as the general public." In addition, the director cited a resolution which had been passed by the Agency on July 5, 1983, which "specifically addressed that portion of the Project Area which includes property owned by Mr. Paris and established more precise requirements with respect to commercial development in that area."

The resolution stated that the described portion of the project area shall be developed consistent with the redevelopment plan for commercial uses consisting of business offices, professional offices, retail stores and shops

---

[2]Appellant submitted a "plan check" for a preliminary determination of conformance with the redevelopment plan, rather than a formal application for building permit or conditional use permit.

and other office functions directly related to and supportive of said commercial uses; that the agency would encourage development, wherever possible by way of owner participation, in uses primarily constituting retail sales and personal services which are consistent with neighborhood shopping center and neighborhood commercial complex developments, professional and general offices, restaurant and cafes. The resolution stated that certain uses are inconsistent with the intended development of the area and shall not be permitted, including *motion picture theaters,* bowling alleys, video game arcades, independent freestanding walk-up or drive-through food establishments which are not a part of a standard restaurant or cafe, independent building materials yards, automotive garages, repairs services and independent service stations, dance halls, open air theaters, drive-in theaters, and any similar uses. With respect to the prohibited uses, the Agency found that the needs of the community would be adequately served by the location of such uses in other more suitable areas; that permitting such uses in that portion of the redevelopment project area would dilute the ability of the Agency to concentrate and develop significant commercial uses which are needed by the community and would dilute the intent of the Agency to foster and encourage the development of strong retail centers and adequate revenue for the community, as well as orderly elimination of blighted conditions within the redevelopment project area.

## ACTION BY CITY

After receipt of the report from the director of the Agency, the city building and planning department notified appellant that no further action would be taken on his plan. Upon appeal to the city council, the council affirmed the decision of the building department. The city council found that the provisions of the redevelopment plan, as well as the Agency's resolution of July 5, 1983, "do not permit the establishment of walk-in theaters as a permitted use for the subject property."

## ACTION BY TRIAL COURT

Appellant filed a petition for writ of mandate pursuant to Code of Civil Procedure sections 1085 and 1094.5 to compel issuance of a building permit. After reviewing declarations and exhibits, the trial court denied appellant's petition.

## DISCUSSION

Appellant's contentions can be divided into two categories. First, he contends that the director of the Agency was wrong in concluding that a movie theater would not conform to the redevelopment plan. Second, he contends

that even if a movie theater would be inconsistent with the redevelopment plan, appellant has a right to build a movie theater since the property is zoned for commercial use. There is no merit whatsoever to these contentions.

Appellant challenges the finding of the director of the Agency that the proposal for a movie theater does not conform to the provisions of the redevelopment plan. Appellant contends that this determination was based upon the July 5, 1983, resolution of the Agency, and that such resolution was invalid as a matter of law because it was, in effect, an amendment of the redevelopment plan which did not comply with formal requirements for amending the plan, such as adoption by the legislative body after public notice and a hearing. (§ 33450 et seq.)

In opposition to the petition for writ of mandate, the director submitted his declaration stating that the resolution was not intended as an amendment of the redevelopment plan but as an administrative interpretation of the original development plan. The director reviewed the history of the studies which were presented to the city council in 1974 prior to adoption of the redevelopment plan, supporting his contention that when the council adopted the redevelopment plan it was clearly understood the plan called for shops and offices and other uses closely related to those specifically mentioned.

■ The original redevelopment plan specified that "commercial uses shall include, without limitation, business offices, professional offices, retail stores and shops and other office functions as may be directly related to industry and commerce as well as the general public." The items specifically mentioned were offices, stores and shops "and other office functions." No mention was made of theater or entertainment functions. Appellant focuses on the words "without limitation" and argues that the redevelopment plan therefore allowed for any "commercial" use. This is not a reasonable interpretation of the plan's language. Had the plan intended to allow any commercial use it could easily have said so. The plan carefully delineated shop and office functions, and the cautionary phrase "without limitation" should not be given the broad meaning appellant ascribes to it.

■ It was proper for the plan to designate limitations on the proposed use of buildings. (§ 33333, subd. (b); *In re Redevelopment Plan for Bunker Hill* (1964) 61 Cal.2d 21, 50-53 [37 Cal.Rptr. 74, 389 P.2d 538].) ■ Necessarily some of the statements in a redevelopment plan will be general and tentative, and formal amendment of the plan is not required for a subsequent administrative interpretation and filling in of details. (*Id.*, at pp. 53-

55.) ■ The director's determination that a proposed movie theater was not in conformance with the redevelopment plan is supported by the record.

Given the validity of this finding, the denial of a building permit for appellant's proposed project lawfully followed under the terms of the redevelopment plan itself, which was adopted by the city council by ordinance in 1974 as its plan for development of the area. (§§ 33220, 33360 et seq.) The plan provided that new development in the area be in accordance with the plan and that upon receiving a report from the director of the Agency finding that a proposed improvement does not meet the requirements of the plan the building department shall withhold the issuance of a permit.

■ To avoid this result appellant argues that even if a movie theater is inconsistent with the redevelopment plan, his application for a permit cannot be denied. He contends that under the City's zoning ordinance he has an absolute right to build a movie theater. Based on this foundation he constructs an argument that the Agency has usurped the city council's zoning authority and violated the zoning laws. Again asserting his "right" to develop the property into a movie theater, he contends that, unless the city council "down zones" the property, the only way he can be prevented from building the theater is for the Agency to purchase or condemn and acquire the property pursuant to its power of eminent domain.[3] Appellant's interpretation of the zoning ordinance is erroneous, and therefore this case does not actually pose most of the issues raised by appellant.

■ Appellant considers construction of a movie theater to be a matter of right in the commercial zone under the City's zoning ordinance. However, we conclude the City's zoning ordinance is not the type which would make a movie theater a permitted use as a matter of right. With respect to theaters the City's basic zoning code (Pico Rivera Mun. Code, § 9206.03-d) provides that in the commercial zone such use is allowed but only under certain conditions, namely, the issuance of a conditional use permit. (Pico Rivera Mun. Code, § 9206.05-b1.)

The zoning ordinance provides that where a conditional use permit is required, it cannot be granted unless the zoning administrator or planning commission makes each and every one of seven required findings.

"E. REQUIREMENTS AND FINDINGS—Prior to the granting of any Conditional Use Permit or Minor Conditional Use Permit Modification, the Plan-

---

[3]Appellant is a tenant, not the owner in fee of the parcel involved. The owner, a trust, is not a party to this litigation. (Cf. §§ 33339, 33339.5, 33398, 33399.) With his proposal, appellant submitted a letter from the trustee stating that he has no objection to appellant's plan.

ning Commission and Zoning Administrator respectively, shall first determine whether or not the application therefor meets the requirements for such and shall make the following findings:

"1. THAT the granting of such permit will be in the interest of furtherance of public welfare:

"2. THAT the proposed use of land described in the application will not be detrimental in any way to other adjoining and neighboring properties in the general area in which the use is proposed to be located;

"3. THAT the property described in the application is suitable for the proposed use of land;

"4. THAT the traffic generating capacity and operation of the proposed use of land will not place a demand for or burden upon other municipal improvements or services, or utilities;

"5. THAT adequate consideration for the protection of the environment has been satisfactorily demonstrated;

"6. THAT the proposed use of land is consistent with the provisions and objectives of the General Plan; and,

"7. THAT adequate consideration has been given to assure the conservation and stabilization of property values, the direction of development and land use planning of the area in which the use is proposed to be located, that the character of the Zone and area in which the use is proposed to be located, and the peculiar suitability of such Zone and area for the particular use is maintained and consistent with the community's overall planning program.

"No property shall qualify for a Conditional Use Permit or Conditional Use Permit—Minor Modification unless each and every requirement and finding hereinabove set forth in this Subsection can be shown and that the Planning Commission and Zoning Administrator, as the case may be, can make the findings of same." (Pico Rivera Mun. Code, § 9213.07-E.)

This is not the type of ordinance which makes a movie theater a use permitted as a matter of right, but rather one which delegates to the planning commission the discretion to approve conditional uses according to the standards established by the legislative body, including a general welfare standard. Such standards and such delegation of authority to the planning commission have long been upheld by the courts. (*Wesley Investment Co.* v.

*County of Alameda* (1984) 151 Cal.App.3d 672, 678-679 [198 Cal.Rptr. 872]; *Groch* v. *City of Berkeley* (1981) 118 Cal.App.3d 518, 522-523 [173 Cal.Rptr. 534]; *Van Sicklen* v. *Browne* (1971) 15 Cal.App.3d 122, 126-127 [92 Cal.Rptr. 786]; Cal. Zoning Practice (Cont.Ed.Bar. 1969) §§ 7.55, 7.56, 7.58, 7.59, 7.64, pp. 291-296, 299.)

 Based upon his erroneous assumption that building a movie theater in the commercial zone is a matter of right under the City's zoning ordinance, appellant contends that to the extent the redevelopment plan and the findings of the director determine that a movie theater is not a permitted use in the project area, they are invalid because the Agency is required to comply with local building and zoning ordinances. (Gov. Code, § 53091; *Kehoe* v. *City of Berkeley* (1977) 67 Cal.App.3d 666, 673 [135 Cal.Rptr. 700].)[4] However, in *Kehoe* there was a direct conflict between the redevelopment plan and the local zoning ordinance. The redevelopment plan called for demolition of residences in the area and conversion of the property to an industrial park, prohibiting residential use. A local zoning ordinance passed as an initiative measure, on the other hand, prohibited demolition of residences in the area.[5] Here we find no such direct conflict between the City's zoning ordinance and the redevelopment plan as it affects appellant's proposal. This is not a case where the redevelopment plan calls for a use which is not permitted under the existing zoning ordinance. Both the zoning ordinance and the redevelopment plan designate commercial uses of the area. Although the plan does not provide for theater use of this property, neither is such a use a matter of right under the zoning ordinance. Appellant's extended argument on the city council's zoning authority and appellant's citation of *HFH, Ltd.* v. *Superior Court* (1975) 15 Cal.3d 508, 514 [125 Cal.Rptr. 365, 542 P.2d 237], impliedly concede that he could not complain if the city council had first "down zoned" the property to prevent theater use. But down zoning was not necessary in this case. Theater use was only conditionally permitted under the existing ordinance.

Where the City's redevelopment plan specified that the area in question would consist of shops and offices and closely related functions, and not theaters, there is no inconsistency between the redevelopment plan and the zoning ordinance, which would permit theater use only upon findings that such use will be in the interest of furtherance of public welfare and will not

---

[4]Moreover, the redevelopment plan itself states that redevelopment in the area shall comply with local zoning and building and safety laws and the provisions of the plan.

[5]Actually, although appellant cites *Kehoe* for its statement that a redevelopment agency must comply with local building and zoning ordinances (67 Cal.App.3d at p. 673), the court ultimately held that the redevelopment agency was not required to comply with the Berkeley neighborhood preservation ordinance because the ordinance directly conflicted with a state law. (67 Cal.App.3d at pp. 675-676.)

be detrimental in any way to other adjoining and neighboring properties; that the property is suitable for the proposed use of land; and that adequate consideration has been given to *"the direction of development and land use planning of the area"* and *"the community's overall planning program."* (Pico Rivera Mun. Code, § 9213.07-E, italics added.)

Since a conditional use permit could not be obtained for a proposal inconsistent with "the direction of development and land use planning of the area" and "the community's overall planning program," denial of appellant's application on the ground of inconsistency with the redevelopment plan involves no infringement on appellant's property rights or the City's zoning ordinance.[6]

Appellant cites numerous other authorities which, upon analysis, have little to do with the facts of this case. This case does not involve an ordinance the effect of which is to deprive the owner of substantially all reasonable use of his property (*Agins* v. *City of Tiburon* (1979) 24 Cal.3d 266, 277 [157 Cal.Rptr. 372, 598 P.2d 25]) or to freeze all development. (Cf. *City of Walnut Creek* v. *Leadership Housing Systems, Inc.* (1977) 73 Cal.App.3d 611, 623, fn. 6 [140 Cal.Rptr. 690]; *Briggs* v. *State of California* ex rel. *Dept. Parks & Recreation* (1979) 98 Cal.App.3d 190, 206-207 [159 Cal.Rptr. 390].) Appellant did not show that the purpose of the requirement that future building permits conform to the redevelopment plan was to depress the price of property for future acquisition by condemnation (*Redevelopment Agency* v. *Contra Costa Theatre, Inc.* (1982) 135 Cal.App.3d 73, 81-82 [185 Cal.Rptr. 159]; cf. *Kissinger* v. *City of Los Angeles* (1958) 161 Cal.App.2d 454, 461-462 [327 P.2d 10]), nor did he establish unreasonable precondemnation activities. (*Agins* v. *City of Tiburon, supra,* 24 Cal.3d at pp. 277-278; cf. *Klopping* v. *City of Whittier* (1972) 8 Cal.3d 39, 52 [104 Cal.Rptr. 1, 500 P.2d 1345].) Appellant also misplaces reliance on *Selby Realty Co.* v. *City of San Buenaventura* (1973) 10 Cal.3d 110, 118 [109 Cal.Rptr. 799, 514 P.2d 111], which held that the enactment of a general plan does not constitute a taking of property and that therefore the plaintiff's complaint for declaratory relief was premature.

---

[6]Appellant also cites section 33331, which states that the redevelopment plan shall conform to the general plan insofar as the latter applies to the project area, and he refers to isolated statements in comments to the City's 1965 general plan to the effect that the City needed commercial recreation such as theaters. He argues that therefore the denial of his request for a permit was inconsistent with the general plan. There is no merit to this contention. The general plan recommended commercial development in this area, including shops, offices, banks and restaurants. The redevelopment plan was therefore consistent with the general plan. The fact that theaters were mentioned in isolated references in the general plan is no indication that a theater was appropriate or necessary at the precise location proposed by appellant. The general plan is a broad statement of policies and objectives, not a precise map of future development of particular parcels. (67 Ops.Cal.Atty.Gen. 75 (1984).)

Analogizing the redevelopment plan in this case to the general plan in *Selby*, appellant cites *Selby's* statement that "[i]f the plan is implemented by the county in the future in such manner as actually to affect plaintiff's free use of his property, the validity of the county's action may be challenged at that time." (*Id.*) But the court there was speaking only with regard to the procedural timeliness of an action. The court did not say that a subsequent implementation which actually affected the plaintiff's free use of his property would constitute a taking of property, only that it could be challenged at that time. (*Id.*, at pp. 118, 119, 128.) So here, although the denial of a permit has affected appellant's free use of his property, such action was lawful in light of the conditional use permit provisions of the zoning ordinance.

We conclude the trial court properly denied the petition for writ of mandate, since appellant failed to establish any abuse of discretion or mandatory duty compelling issuance of a permit.

The judgment is affirmed.

Hastings, J., and Eagleson, J., concurred.