Filed 5/29/14  3328 Oakhurst v. Oakhurst National Plaza CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| 3328 OAKHURST, LLC, | B242868 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SC110202) |
| v. | |
| OAKHURST NATIONAL PLAZA, LLC et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Allan J. Goodman, Judge.  Affirmed.

Law Offices of James B. Smith, James B. Smith; Benedon & Serlin, Gerald M. Serlin and Douglas G. Benedon for Defendants and Appellants.

Egerman & Brown, Mark Egerman, Philip Brown and Lee A. Egerman for Plaintiff and Respondent.

_____

Defendant and appellant Oakhurst National Plaza, LLC (Oakhurst National), through its manager, LM Management LLC (LM), entered into a purchase and sale agreement (the purchase agreement) to sell its apartment building for $7.5 million to Mark Egerman (Mark) (the transaction). Pursuant to an amendment to the purchase agreement, plaintiff and respondent 3328 Oakhurst, LLC (3328 Oakhurst) was subsequently substituted in for Mark as the buyer.

After Oakhurst National cancelled escrow and terminated the transaction, 3328 Oakhurst sued Oakhurst National, LM, and LM's sole owner and member, Marvin Markowitz (Markowitz), for, inter alia, breach of the purchase agreement. Oakhurst National, LM, and Markowitz cross-complained for breach of the same agreement. Following trial, a jury found in favor of 3328 Oakhurst, and judgment was entered.

Oakhurst National and LM appeal. They argue: (1) they were discharged from performance because 3328 Oakhurst did not perform a concurrent condition and/or condition precedent; and (2) LM was not a party to the purchase agreement. According to Oakhurst National and LM, because the judgment must be reversed, so too must the award of attorney fees and costs in favor of 3328 Oakhurst.

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

*The Purchase Agreement*

Oakhurst National owned a 31-unit apartment building located at 3328 Oakhurst Avenue in Los Angeles (the building). LM was Oakhurst National's managing member; Markowitz was LM's manager as well as its sole member and owner.

Oakhurst National elected to sell the property. Mark and his son, Lee Egerman (Lee), learned of the listing and thought the property presented a good investment opportunity.

In February 2010, Oakhurst National and Mark executed the purchase agreement.[1] Pursuant to the purchase agreement, Mark agreed to purchase the property for $7.5 million. Also pursuant to the terms of the purchase agreement, Mark was to assume Oakhurst National's existing loan with Chase Bank (the Chase Bank Loan), which was approximately $5.135 million and tender the $2.365 million balance into escrow.

The purchase agreement provides that time is of the essence.

*Buyer's Loan to Seller*

The parties met on February 17, 2010. At the meeting, Markowitz revealed that he was under tremendous financial pressure and that Oakhurst National needed funds to meet third party obligations before the close of escrow. Because they shared community ties, Mark agreed to loan Oakhurst National $1 million in exchange for an option agreement. In turn, Markowitz promised that Oakhurst National would "not cancel."

*Amendment to Purchase Agreement*

The purchase agreement was formally amended on March 25, 2010. The amendment accomplished three primary objectives: (1) Mark assigned his interest in the purchase agreement to 3328 Oakhurst, an entity in which Mark and Lee were comanaging members; (2) In lieu of depositing $225,000, 3328 Oakhurst deposited $1 million into escrow with instructions to release it to Oakhurst National; and (3) Oakhurst National agreed that it could not cancel the purchase agreement while the $1 million loan was still outstanding.

Under the terms of the amendment, the $1 million released would be applied to the purchase price of the property, but if, for whatever reason, the transaction did not close, Oakhurst National would still be obligated to repay the loan within six months. If the transaction did not close and Oakhurst National failed to timely repay the $1 million loan, title to the property would be transferred to 3328 Oakhurst, in which Oakhurst National

---

[1]     The agreement was signed by LM on Oakhurst National's behalf.

3

would retain the $1 million and 3328 Oakhurst would acquire title to the property subject to the existing lien held by Chase Bank.

*Escrow*

On March 30, 2010, escrow opened, 3328 Oakhurst was to apply to Chase Bank for approval within five days after escrow opened. In fact, 3328 Oakhurst applied to Chase Bank to assume the Chase Bank Loan on February 19, 2010, six weeks before it was required to do so. And, pursuant to the terms of the parties' agreement, Chase Bank was to approve 3328 Oakhurst's loan assumption within 45 days of the opening of escrow (May 14, 2010).

On May 13, 2010, the day before the expiration of the 45-day loan assumption deadline, 3328 Oakhurst met with Oakhurst National to discuss the timing of Chase Bank's approval. It had become apparent that Chase Bank was not going to act within the time frame established by the purchase agreement. 3328 Oakhurst wanted Oakhurst National to reaffirm its prior representation that it would close the deal, even if Chase Bank did not approve the loan assumption within the contractual 45 days.

At the meeting, Markowitz was very agitated and distracted by his financial burdens. He confirmed that "he had to close. He'd give [3328 Oakhurst] whatever time was necessary to get the approval [and that 3328 Oakhurst] should continue to move forward." He advised 3328 Oakhurst to "[t]ake the time" it needed and expressly stated that Oakhurst National would not cancel.

Also at the meeting, Mark handed Markowitz a draft of a second amendment to the purchase agreement, which would have extended the closing date for the escrow. Markowitz was concerned by this amendment because he believed that it put Oakhurst National at risk of losing the property. Markowitz stated that he would show it to his attorney and then return it.

Based in part on Markowitz's representations made at the May 13, 2010, meeting, 3328 Oakhurst continued to move forward with its assumption of the Chase Bank Loan. However, when Oakhurst National failed to return a signed copy of the second

4

amendment to the purchase agreement, 3328 Oakhurst became concerned about the purchase.

*Chase Bank's Approval of 3328 Oakhurst's Assumption of the Chase Loan*

On June 3, 2010, Chase Bank sent 3328 Oakhurst a letter conditionally approving the loan assumption subject to 3328 Oakhurst agreeing to specified terms and conditions.

The following day, 3328 Oakhurst notified both Oakhurst National and its real estate agent that Chase Bank had "tentatively approved the assumption of the loan." That same day, 3328 Oakhurst also sent Chase Bank an e-mail informing it that it had accepted Chase Bank's specified terms and conditions.

*Oakhurst National Cancels Escrow*

On June 16, 2010, Oakhurst National notified escrow that it was canceling the sale. Markowitz explained that he was "unable to wait any longer" and accused 3328 Oakhurst of failing "to comply with the terms of the Purchase Agreement." 3328 Oakhurst was surprised by Oakhurst National's cancellation notice. Believing that Oakhurst National must have been confused with the loan assumption process, Lee sent an e-mail to Oakhurst National detailing where the parties stood in the process.

3328 Oakhurst believed that Oakhurst National did not have the right to cancel escrow and continued its attempts to close. On June 21, 2010, Lee, on behalf of 3328 Oakhurst, sent Oakhurst National's real estate agent an e-mail giving notice that Fannie Mae had approved 3328 Oakhurst's loan assumption and that escrow was in a position to close but for Oakhurst National's notice of cancellation. By this time, the loan had been approved and Chase Bank had "everything [it] needed to prepare loan documents."

Mark followed up with a second e-mail to Oakhurst National's real estate agent about whether Oakhurst National would rescind its cancellation and close and whether 3328 Oakhurst should wire the requisite funds to escrow. 3328 Oakhurst continued to make efforts to close the transaction. Throughout this time, Chase Bank remained willing to proceed with 3328 Oakhurst's assumption of the loan.

5

By the end of June 2010, 3328 Oakhurst notified Oakhurst National that it could close within a day and pushed for a closing of escrow. Escrow sent 3328 Oakhurst and Oakhurst National the loan assumption documents, which 3328 Oakhurst executed, but Oakhurst National did not. Other than the parties signing the loan documents, no other documents were required to close escrow.

On August 3, 2010, 3328 Oakhurst sent Oakhurst National's attorney a letter detailing the history of its effort to purchase the property. In that letter, 3328 Oakhurst gave notice that Oakhurst National was in breach for failing to close and again attempted to persuade Oakhurst National to close. Oakhurst National did not respond to that letter.

*Repayment of the Loan*

In September 2010, Oakhurst National repaid 3328 Oakhurst the $1 million loan.

*Complaint*

In November 2010, 3328 Oakhurst filed an action against Oakhurst National, LM, and Markowitz for breach of contract, breach of the implied covenant of good faith and fair dealing, and fraud. Oakhurst National, LM, and Markowitz each filed a cross-complaint against 3328 Oakhurst, Lee, and Mark.

*Motion for Summary Judgment*

3328 Oakhurst moved for summary judgment against LM and Markowitz on their cross-complaints, arguing that they were not parties to the transaction and therefore had no right to sue for breach. The trial court agreed and entered judgment against LM and Markowitz on their cross-complaints.

*Trial; Judgment; Appeal*

On April 24, 2012, a jury trial commenced. Following a variety of dismissals, a motion for partial directed verdict, and a stipulation, the only claims submitted to the jury were 3328 Oakhurst's claims against Oakhurst National and LM for breach of contract and breach of the implied covenant of good faith and fair dealing. The jury was instructed, pursuant to the stipulation, to treat Oakhurst National and LM as one and the same entity.

The jury rendered a verdict in favor of 3328 Oakhurst, finding Oakhurst National and LM jointly and severally liable for breach of contract and breach of the implied covenant of good faith and fair dealing. It awarded compensatory damages in the amount of $605,100.

Judgment was entered, and Oakhurst National, LM, and Markowitz's timely appeal ensued.

## DISCUSSION

I. *Standard of Review*

The parties agree as to the standard of review. We are bound by the jury's factual determinations if they are supported by substantial evidence, and we review questions of law de novo. (*SFPP v. Burlington Northern & Santa Fe Ry. Co.* (2004) 121 Cal.App.4th 452, 461.)

II. *Analysis*

Oakhurst National raises three arguments as to why the judgment should be reversed. We address each in turn.

A. <u>Discharge from performance</u>

Oakhurst National argues that it was discharged from its performance under the purchase agreement because 3328 Oakhurst did not perform. Thus, according to Oakhurst National, it cannot be liable for breach of contract or breach of the implied covenant. The evidence indicates otherwise. On June 16, 2010, Oakhurst National cancelled and terminated the purchase agreement. At that time, 3328 Oakhurst had no obligation to fund the purchase price, since Oakhurst National had expressly waived the condition that the Chase Bank Loan be assumed within 45 days.

In fact, until Chase Bank approved the assumption, 3328 Oakhurst could not fund the purchase price because 3328 Oakhurst was first required to assume the loan, a requirement of the purchase agreement. But, 3328 Oakhurst was always able to tender performance; the only obstacle was Oakhurst National's refusal to close. Under these circumstances, Oakhurst National was not discharged from performance.

7

*Pittman v. Canham* (1992) 2 Cal.App.4th 556 is distinguishable. In that case, neither party performed for several months; therefore, neither the buyer nor the seller was entitled to enforce the contract. (*Id*. at pp. 559–560.) Here, 3328 Oakhurst tendered full performance, while Oakhurst National cancelled and terminated the transaction.

Oakhurst National also argues that because it cannot be liable for breach of contract, it necessarily cannot be liable for breach of the implied covenant. As set forth above, we conclude that Oakhurst National is liable for breach of contract. Thus, this argument fails.

B. <u>Because LM was not a party to the purchase agreement, it cannot be liable for its breach</u>

LM argues that as Oakhurst National's agent, it was not liable for Oakhurst National's breach of contract. But, LM forgets that it stipulated that it and Oakhurst National were to be treated by the jury as one and the same company.[2] Specifically, they agreed that all instructions referring to Oakhurst National were to include LM. Following those instructions, the jury found LM "jointly and severally liable" for Oakhurst National's breach of contract. LM cannot now complain that the jury did so. (*Redevelopment Agency v. City of Berkeley* (1978) 80 Cal.App.3d 158, 167.)

C. <u>Attorney fees and costs</u>

Finally, Oakhurst National and LM assert that because the judgment against each of them must be reversed, so too must the award of attorney fees and costs. Because we affirm the judgment, this argument fails.

---

[2] At oral argument, appellants' counsel argued that the parties entered into a standard agency stipulation. The terms of that stipulation are never clarified for us. And, in any event, no agency instructions were given to the jury.

8

## DISPOSITION

The judgment is affirmed. 3328 Oakhurst is entitled to costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
                          ASHMANN-GERST


We concur:


_____, P. J.
       BOREN


_____, J.*
       FERNS

---

\*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.