Filed 10/11/23  Tome v. Parsons Environment & Infrastructure Group CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| PEDRO TOME, | B316661 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 21STCV11315) |
| v. | |
| PARSONS ENVIRONMENT & INFRASTRUCTURE GROUP INC., et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Rupert A. Byrdsong, Judge.  Affirmed in part; reversed in part.

Ogletree, Deakins, Nash, Smoak & Stewart, Jack S. Sholkoff, Hardy Ray Murphy, N. Nikki Staggs and Catherine L. Brackett for Defendants and Appellants.

Eanet, Matthew L. Eanet, Danielle G. Eanet and Iris E. Salem for Plaintiff and Respondent.

————————————

## INTRODUCTION

Parsons Environment & Infrastructure Group and its parent company Parsons Corporation (Parsons) appeal an order denying their motion to compel arbitration of Pedro Tome's (Tome) claim under the California Labor Code Private Attorneys General Act of 2004 (Lab. Code, § 2698 et seq.) (PAGA).[1] Parsons's motion was based on Tome's predispute agreement to arbitrate all claims arising from their employment relationship.

Tome brought claims in his individual and representative capacity under PAGA. We hold his claim for civil penalties based on alleged Labor Code violations he personally suffered (his "individual" PAGA claim) and his other individual claims are subject to arbitration under *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. ___ [213 L.Ed.2d 179, 142 S.Ct. 1906] (*Viking River*), decided months after the trial court denied the motion to compel arbitration. We affirm the trial court's order to adjudicate the representative PAGA claim in the Superior Court.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Background Information

Parsons employed Tome from August 15, 2016 to July 1, 2020. Tome was initially classified as an exempt construction manager and was later reclassified as an hourly foreman and crew lead. His employment was terminated on July 2, 2020.

---

[1]    Undesignated statutory references are to the Labor Code.

## II. Tome's Complaint

On March 24, 2021, Tome filed a complaint against Parsons, challenging termination of his employment and alleging he was misclassified as "exempt" during that employment. He alleged a variety of individual statutory violations of the California Labor Code and sought civil penalties under PAGA on behalf of himself, the general public, and other "Aggrieved Employees" who were also purportedly misclassified as exempt. Specifically he alleged causes of action for failure to pay overtime wages; failure to reimburse necessary business expenses; meal period violations; rest period violations; failure to timely pay final wages upon termination of employment; failure to pay all wages earned during employment; failure to furnish accurate itemized wage statements; retaliation in violation of section 1102.5; unfair competition in violation of Business & Professional Code section 17200; and wrongful termination of employment. He sought to recover civil penalties under PAGA for the alleged violations.

## III. Parsons's Motion to Compel Arbitration

On August 30, 2021, Parsons moved to compel arbitration of Tome's claims and to stay proceedings in the trial court pending arbitration.

As a preliminary matter, the parties do not dispute that the arbitration agreement at issue here falls within the scope of the Federal Arbitration Act (FAA).[2]

---

[2] The FAA stands as a congressional declaration of a liberal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. (*Vaughn v. Tesla, Inc.* (2023) 87 Cal.App.5th 208, 232.) To ensure that arbitration agreements are enforced according to their terms, the

At the start of his employment, Tome had signed an agreement to arbitrate. The agreement provides that both Tome and Parsons agree to arbitrate any and all claims arising out of Tome's employment. However, paragraph 8 of the agreement, entitled "Collective/Representative/Class Action Waiver," also provides that all claims subject to the agreement must be "pursued on an individual basis only."

Paragraph 12 of the agreement contains a severability clause. It provides that "If the prohibition against class/collective actions is deemed unlawful, then such action shall proceed forward in court as a collective or class action." If any other part of the agreement is deemed unlawful— other than the class or collective action waiver—the unlawful provision "shall be deemed severed," and the other terms shall "remain in full force and effect."

## IV. **Trial Court's Ruling**

On October 4, 2021, the trial court denied Parsons's motion to compel arbitration. The trial court held that the contractual waiver of PAGA representative claims was invalid under California law. It found that the severance provision (Paragraph 12) required the parties to adjudicate the entire action (individual and representative claims) in court if the prohibition on class or collective actions was invalid. We note the trial court did not have the benefit of *Viking River* which held that individual claims subject to the FAA must be arbitrated, notwithstanding the existence of PAGA representative claims.

---

FAA preempts state laws which require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration. (*Ibid.*)

4

(*Viking River*, *supra*, 596 U.S. ___ [142 S.Ct. 1906.)  Put another way, the existence of PAGA representative claims, even if unarbitrable under California law, does not mandate that all claims remain in the trial court for adjudication.  The claims may be adjudicated in different fora.

On November 18, 2021, Parsons filed a timely notice of appeal.

## DISCUSSION

I.  **Standard of Review**

Where, as here, the trial court's order denying a motion to compel arbitration rests solely on an issue of law, we review that decision de novo.  (*Seifu v. Lyft, Inc.* (2023) 89 Cal.App.5th 1129, 1136 (*Seifu*); *Gregg v. Uber Technologies, Inc.* (2023) 89 Cal.App.5th 786, 794.)

II.  **Applicable Law**

A.    **<u>PAGA</u>**

"California's Labor Code contains a number of provisions designed to protect the health, safety, and compensation of workers.  Employers who violate these statutes may be sued by employees for damages or *statutory* penalties.  [Citations.]  . . . Several Labor Code statutes provide for additional *civil* penalties, generally paid to the state unless otherwise provided.  [Citation.] Before PAGA's enactment, only the state could sue for civil penalties."  (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 80 (*Kim*), citing *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348. 378 (*Iskanian*).)

5

Before 2004, the California Labor & Workforce Development Agency (LWDA) was responsible for collecting civil penalties for labor law violations. (*Nickson v. Shemran, Inc.* (2023) 90 Cal.App.5th 121, 127 (*Nickson*).) The Legislature found, however, that the LWDA lacked sufficient resources to keep pace with the sheer number and gravity of offenses. (*Ibid*.) As a solution, the Legislature enacted PAGA to empower aggrieved employees to act as private attorneys general to prosecute and recover civil penalties for Labor Code violations on the State's behalf. (§ 2699, subd. (a); *Nickson*, at p. 127; *Seifu*, *supra*, 89 Cal.App.5th at p. 1137.) Although an aggrieved employee is the named plaintiff in a PAGA action, an employee suing under PAGA " 'does so as the proxy or agent of the state's labor law enforcement agencies.' " (*Kim*, *supra*, 9 Cal.5th at p. 81, italics omitted; *Seifu*, at p. 1137.) Thus, "[e]very PAGA claim is 'a dispute between an employer and the state,' " and "[r]elief under PAGA is designed primarily to benefit the general public, not the party bringing the action." (*Kim*, at p. 81.)

Two types of claims authorized by PAGA are " '*individual' PAGA claims*, which are based on Labor Code violations sustained by the plaintiff, [and] *'representative' [or non-individual] PAGA claims*, which are based on Labor Code violations involving employees other than the plaintiff." (*Galarsa v. Dolgen California, LLC* (2023) 88 Cal.App.5th 639, 647, italics added.)

## B.    *Iskanian*

In *Iskanian*, *supra*, 59 Cal.4th at p. 382, the California Supreme Court held that "an employee's right to bring a PAGA action is unwaivable." The Court rejected the employer's argument that the arbitration agreement was enforceable

6

because it allowed the employee to bring individual PAGA claims and barred only "representative" (i.e., non-individual) PAGA claims. The Court concluded that "an arbitration agreement requiring an employee as a condition of employment to give up the right to bring representative PAGA actions in any forum is contrary to public policy" and "unenforceable as a matter of state law." (*Id*. at pp. 360, 384.) *Iskanian* also concluded the FAA did not preempt state law in that respect, because the "FAA's goal of promoting arbitration as a means of private dispute resolution does not preclude our Legislature from deputizing employees to prosecute Labor Code violations on the state's behalf." (*Id*. at p. 360.)

### C. *Viking River*

On June 15, 2022, the United States Supreme Court decided *Viking River*, addressing the extent to which the FAA preempts the *Iskanian* rule barring PAGA waivers. *Viking River* abrogated *Iskanian* in part and held that an employer could enforce an agreement calling for arbitration of individual PAGA claims. (*Viking River*, *supra*, 596 U.S. at p. ___ [142 S.Ct. at pp. 1916–1917, 1924–1925].)

The *Viking River* Court described the two rules adopted by *Iskanian*. *Iskanian's* "principal rule prohibits waivers of 'representative' PAGA claims . . . . That is, it prevents parties from waiving representative standing to bring PAGA claims in a judicial or arbitral forum." (*Viking River*, *supra*, 596 U.S. at p. ___ [142 S.Ct. at p. 1916], italics omitted.) *Iskanian's* "secondary rule . . . invalidates agreements to separately arbitrate or litigate 'individual PAGA claims for Labor Code violations that an employee suffered,' on the theory that resolving

7

victim-specific claims in separate arbitrations does not serve the deterrent purpose of PAGA." (*Id.* at pp. 1916–1917.)

The *Viking River* Court explained that PAGA claims are "representative" in two ways. (*Viking River*, *supra*, 596 U.S. at p. ___ [142 S.Ct. at p. 1916].) First, all PAGA claims are "representative" because a plaintiff brings a PAGA claim as an agent or proxy before the state. (*Ibid.*) Second, some PAGA claims are "representative" because they are brought by employees to address violations suffered by other employees *as well as themselves*. (*Ibid.*) In light of this distinction, the Supreme Court held that *Iskanian*'s "principal rule" prohibiting "wholesale" waivers of an employee's right to pursue a "representative" PAGA claim on behalf of the state was not preempted by the FAA. (*Id.* at pp. 1916–1917.) That is because "the FAA does not require courts to enforce contractual waivers of substantive rights and remedies." (*Id.* at p. 1919.)

On the other hand, *Viking River* held *Iskanian*'s "secondary rule," prohibiting the separation of individual and non-individual PAGA claims, was preempted by the FAA to the extent it "invalidates agreements to arbitrate only 'individual PAGA claims for Labor Code violations that an employee suffered.' " (*Viking River*, *supra*, 596 U.S. at p. ___ [142 S.Ct. at p. 1923].) *Iskanian*'s "prohibition on contractual division of PAGA actions into constituent claims unduly circumscribes the freedom of parties to determine 'the issues subject to arbitration' and 'the rules by which they will arbitrate,' [citation], and does so in a way that violates the fundamental principle that 'arbitration is a matter of consent.' " (*Ibid.*) Accordingly, an arbitration agreement compelling individual claims to arbitration is enforceable as to the individual portion of a PAGA claim. (*Id.* at

8

p. 1925] ["Viking was entitled to enforce the agreement insofar as it mandated arbitration of Moriana's individual PAGA claim."].)

*Viking River* stated the "conflict between PAGA's procedural structure and the FAA . . . derives from the statute's built-in mechanism of claim joinder," which permits broad joinder of the claims of other employees to the claim of the individual plaintiff. (*Viking River*, *supra*, 596 U.S. at p. ___ [142 S.Ct. at p. 1923].) "A state rule imposing an expansive rule of joinder in the arbitral context would defeat the ability of parties to control which claims are subject to arbitration. Such a rule would permit parties to superadd new claims to the proceeding, regardless of whether the agreement between them committed those claims to arbitration. Requiring arbitration procedures to include a joinder rule of that kind compels parties to either go along with an arbitration in which the range of issues under consideration is determined by coercion rather than consent, or else forgo arbitration altogether. Either way, the parties are coerced into giving up a right they enjoy under the FAA." (*Id.* at p. 1924.)

*Viking River* continued, "When made compulsory by way of *Iskanian*, the joinder rule internal to PAGA functions in exactly this way. Under that rule, parties cannot agree to restrict the scope of an arbitration to disputes arising out of a particular ' " 'transaction' " ' or ' "common nucleus of facts." ' [Citation.] If the parties agree to arbitrate 'individual' PAGA claims based on personally sustained violations, *Iskanian* allows the aggrieved employee to abrogate the agreement after the fact and demand either judicial proceedings or an arbitral proceeding that exceeds the scope jointly intended by the parties. The only way for parties to agree to arbitrate *one* of an employee's PAGA claims is to also 'agree' to arbitrate *all other* PAGA claims in the same

9

arbitral proceeding." (*Viking River*, *supra*, 596 U.S. at p. ___ [142 S.Ct. at p. 1924].) For these reasons, *Viking River* held "the FAA preempts the rule of *Iskanian* insofar as it precludes division of PAGA actions into individual and non-individual claims through an agreement to arbitrate." (*Ibid*.)

Finally, the *Viking River* decision concluded the representative/"non-individual" claim had to be dismissed because the plaintiff no longer had standing to assert the claim. (*Viking River*, *supra*, 596 U.S. at p. ___ [142 S.Ct. at p. 1925].) The Court reasoned, "PAGA provides no mechanism to enable a court to adjudicate non-individual PAGA claims once an individual claim has been committed to a separate proceeding. Under PAGA's standing requirement, a plaintiff can maintain non-individual PAGA claims in an action only by virtue of also maintaining an individual claim in that action." (*Ibid*.) The Court continued, "When an employee's own dispute is pared away from a PAGA action, the employee is no different from a member of the general public, and PAGA does not allow such persons to maintain suit. [Citation.] As a result, [the plaintiff] lacks statutory standing to continue to maintain her non-individual claims in court, and the correct course is to dismiss her remaining claims." (*Ibid*.)

Regarding this final point, Justice Sotomayor observed in a concurrence that, "if this Court's understanding of state law is wrong, California courts, in an appropriate case, will have the last word. Alternatively, if this Court's understanding is right, the California Legislature is free to modify the scope of statutory standing under PAGA within state and federal constitutional limits." (*Viking River*, *supra*, 596 U.S. at p. ___ [142 S.Ct. at p. 1926].)

10

### D. *Adolph v. Uber Technologies, Inc.*

Justice Sotomayor's prediction that California courts would have "the last word" on the scope of statutory standing under PAGA came true with *Adolph v. Uber Technologies, Inc.* (2023) 14 Cal.5th 1104 (*Adolph*).

*Adolph* presents facts very similar to this case. Employee Adolph agreed to arbitrate, "on an individual basis only, almost all work-related claims he might have against Uber." (*Adolph, supra,* 14 Cal.5th at p. 1114.) With regard to PAGA actions, the agreement said: " 'To the extent permitted by law, you and Company agree not to bring a representative action on behalf of others under the [PAGA] in any court or in arbitration. This waiver shall be referred to as the "PAGA Waiver." ' The agreement also includes a severability clause: 'If the PAGA Waiver is found to be unenforceable or unlawful for any reason, (1) the unenforceable provision shall be severed from this Arbitration Provision; (2) severance of the unenforceable provision shall have no impact whatsoever on the Arbitration Provision or the Parties' attempt to arbitrate any remaining claims on an individual basis pursuant to the Arbitration Provision; and (3) any representative actions brought under the PAGA must be litigated in a civil court of competent jurisdiction . . . .' " (*Id.* at p. 1115.) The questions presented in *Adolph* is "whether an aggrieved employee who has been compelled to arbitrate claims under PAGA that are 'premised on Labor Code violations actually sustained by' the plaintiff [citations] maintains statutory standing to pursue 'PAGA claims arising out of events involving other employees' . . . . We hold that the answer is yes." (*Id.* at p. 1114.)

Before further explaining its holding, the Court noted that an "aggrieved employee" under PAGA is someone who was employed by the alleged violator and against whom one or more of the alleged violations was committed.  (*Adolph, supra,* 14 Cal.5th at p. 1114.)  This was the Court's holding in *Kim*, where it rejected the notion that when plaintiff settled his individual claims he lost standing to pursue the remaining representative claims.  (*Kim, supra,* 9 Cal.5th at pp. 83–86.)  The Court also noted that a plaintiff does not lose standing when the alleged individual claims are time-barred.  (*Johnson v. Maxim Healthcare Services, Inc.* (2021) 66 Cal.App.5th 924, 930.  In sum, the *Adolph* Court declined to add standing requirements to the statutory definition of "aggrieved employee."  It held: "[A] worker becomes an 'aggrieved employee' with standing to litigate claims on behalf of fellow employees upon sustaining a Labor Code violation committed by his or her employer.  [Citations.] Standing under PAGA is not affected by enforcement of an agreement to adjudicate a plaintiff's individual claim in another forum.  Arbitrating a PAGA plaintiff's individual claim does not nullify the fact of the violation or extinguish the plaintiff's status as an aggrieved employee, any more than the time-barring of remedies did in *Johnson* or the settlement of the individual damages claims did in *Kim*.  [Citations.]  The operative complaint alleges that Adolph experienced Labor Code violations while driving for Uber.  Under *Kim*, Adolph's allegations that Labor Code violations were committed against him while he was employed by Uber suffice to confer standing to bring a PAGA action."  (*Adolph,* at p. 1121.)

III.   **Analysis**

Preliminarily, we address Parsons's argument—raised for the first time on appeal—that the arbitration agreement's language waived only "class or collective actions," not representative claims.  As a general rule, issues not raised in the trial court cannot be raised for the first time on appeal.  (*Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603.)

The general rule against new issues is subject to an exception that grants appellate courts the discretion to address questions not raised in the trial court when the theory presented for the first time on appeal involves only a legal question determinable from facts that are (1) uncontroverted in the record and (2) could not have been altered by the presentation of additional evidence.  (*County of Kern v. T.C.E.F., Inc.* (2016) 246 Cal.App.4th 301, 326; *Redevelopment Agency v. City of Berkeley* (1978) 80 Cal.App.3d 158, 167.)

We conclude the exception to the general rule does not apply to the new argument raised by Parsons on appeal.  First, the claim that the contractual phase "class or collective actions" does not include representative actions could and should have been addressed in the trial court because resolution of the issue may have involved factual evidence as to what the drafters of the agreement meant by omitting the word "representative" from that phrase.  Second, Parsons's motion to compel asked the court to stay the representative claims while the individual claims went to arbitration.  Parsons did not in any way argue, as it does now, that the representative claims were not encompassed in the "class or collective action" waiver.  We conclude this contention is forfeited.

In supplemental briefing, both parties agree that *Viking River* and *Adolph* permit adjudication of individual claims in arbitration even when representative claims remain in the superior court. They agree, as do we, that a representative claim remains in the superior court where, as here, the class action waiver is invalid under *Kim* and *Ishkanian*. As to the individual claims, the parties disagree on the effect of the severance clause. Tome argues the severance clause compels adjudication of the individual claim in the superior court. He interprets the severance clause as providing that the entire action remain in superior court if the "class or collective" waiver is invalid.

Paragraph 12 of the agreement to arbitrate contains the severance clause: "12. <u>Severability</u>: If the prohibition against class/collective actions is deemed unlawful, then such action shall proceed forward in court as a collective or class action."

Interpretation of the severance clause requires us to discern the meaning of the term "such action." We conclude "such action" refers to the representative claim only, not every claim in the complaint. Interpreting "such action" to include all individual claims as well as representative claims would basically wipe out the individual claims because, in the words of Paragraph 12, the individual and representative claims, together, would be proceeding "forward in court as a collective or class action" only.

## DISPOSITION

The order denying Parsons's motion to compel arbitration of the individual claims is reversed.  The order denying Parsons's motion to compel arbitration of the representative claim is affirmed.

Due to the change in the law, each party shall bear its own costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

STRATTON, P. J.

We concur:

GRIMES, J.

VIRAMONTES, J.